Case No. 23-55019

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRISTOL SL HOLDINGS, INC.,

*Plaintiff-Appellant*,

vs.

CIGNA HEALTH AND LIFE INSURANCE COMPANY
AND CIGNA BEHAVIORAL HEALTH, INC.,

*Defendants-Appellees*.

On Appeal From The United States District Court
For The Central District of California, Santa Ana
Hon. Philip S. Gutierrez, Chief District Judge
Case No. 8:19-cv-00709-PSG-ADS

## DEFENDANTS-APPELLEES' ANSWERING BRIEF

### McDERMOTT WILL & EMERY LLP

William P. Donovan, Jr.
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310-277-4110
Facsimile: +1 212-277-4730
wdonovan@mwe.com

Richard W. Nicholson, Jr.
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: +1 212-547-5337
Facsimile: +1 212-547-5400
rnicholson@mwe.com

*Counsel for Defendants-Appellees*
*Cigna Health and Life Insurance Company*
*and Cigna Behavioral Health, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Cigna Health and Life Insurance Company is a wholly-owned subsidiary of Connecticut General Life Insurance Company, which is a wholly-owned subsidiary of Connecticut General Corporation, which is a wholly-owned subsidiary of Cigna Holdings, Inc., which is a wholly-owned subsidiary of Cigna Holding Company, which is a wholly-owned subsidiary of The Cigna Group (f/k/a Cigna Corporation), a publicly traded corporation (NYSE: CI).

Cigna Behavioral Health, Inc., a Minnesota corporation, is a wholly-owned subsidiary of Connecticut General Corporation, which is a wholly-owned subsidiary of Cigna Holdings, Inc., which is a wholly-owned subsidiary of Cigna Holding Company, which is a wholly-owned subsidiary of The Cigna Group (f/k/a Cigna Corporation), a publicly traded corporation (NYSE: CI).

The Cigna Group has no parent corporation, and no publicly held corporation owns 10% or more of the stock of The Cigna Group.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .......................................i

TABLE OF CONTENTS ........................................................... ii

TABLE OF AUTHORITIES ......................................................iv

INTRODUCTION.....................................................................1

STATEMENT OF JURISDICTION .......................................3

QUESTIONS PRESENTED .....................................................4

STATEMENT OF THE CASE ...................................................5

    A.    The Parties............................................................5

    B.    Cigna's SIU Investigation of Sure Haven.......................5

    C.    Cigna's SIU Post-Flag Investigation of Sure Haven. .......9

    D.    Bristol's Lack of Evidence Regarding VOB and Authorization Calls. ...............................................12

    E.    Procedural History .......................................15

SUMMARY OF ARGUMENT ...................................................17

ARGUMENT ...........................................................................19

I.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON BRISTOL'S ERISA CLAIM. ..........20

    A.    The District Court Correctly Held that Cigna Did Not Abuse Its Discretion by Denying Sure Haven's Claims for Fee-Forgiving. ....................................20

    B.    Bristol's Arguments that *De Novo* Review Applies Were Waived but, Regardless, Are Baseless...........................29

    C.    Even Under *De Novo* Review, Bristol's ERISA Claim Still Fails for Multiple Reasons. ............................35

**II.** **THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON BRISTOL'S STATE LAW CLAIMS.** ...................................................38

    **A.** Bristol's State Law Claims Are Preempted Under ERISA § 514(a). ...................................................39

        1. The District Court Correctly Held That Bristol's State Law Claims Have a "Reference to" the ERISA Plans. .......40

        2. The District Court Correctly Held That Bristol's State Law Claims Bear Directly on an ERISA-Regulated Relationship. ...................................................44

        3. The District Court's Summary Judgment Decision Is Consistent with Ninth Circuit Precedent. ...........................46

        4. The District Court's Summary Judgment Is Not In Conflict With Precedent From Other Circuits. ...................50

        5. This Court's Prior Decision Explicitly Took No Position on Preemption. ...................................................52

    **B.** Bristol's State Law Claims Fail as a Matter of Law. .....................53

**III.** **THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING BRISTOL'S PROCEDURALLY AND SUBSTANTIVELY DEFECTIVE MOTION FOR RECONSIDERATION.** ...................................................56

**CONCLUSION** ...................................................58

**ADDENDUM** ...................................................62

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Abatie v. Alta Health & Life Ins. Co.*,
   458 F.3d 955 (9th Cir. 2006) ........................................................35, 36

*Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*,
   662 F.3d 376 (5th Cir. 2011), *adhered to on reh'g en banc*,
   698 F.3d 229 (5th Cir. 2012) ................................................................52

*Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*,
   2021 WL 2857241 (N.D. Tex. July 8, 2021)......................................27

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004)......................................................................39, 45

*Allstate Ins. Co. v. Herron*,
   634 F.3d 1101 (9th Cir. 2011) ............................................................57

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
   2015 WL 12778048 (C.D. Cal. Oct. 23, 2015) ..................................34

*Alvis v. AT & T Integrated Disability Serv. Ctr.*,
   377 F. App'x 673 (9th Cir. 2010)................................................21, 25

*Am. Emps. Grp., Inc. v. Emp. Dev. Dep't*,
   154 Cal. App. 4th 836 (Cal. Ct. App. 2007)......................................53

*Atel Fin. Corp. v. Quaker Coal Co.*,
   321 F.3d 924 (9th Cir. 2003) ..............................................................38

*Barboza v. Cal. Ass'n of Pro. Firefighters*,
   651 F.3d 1073 (9th Cir. 2011) ............................................................37

*Booton v. Lockheed Med. Ben. Plan*,
   110 F.3d 1461 (9th Cir. 1997) ............................................................25

*Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*,
   410 F.3d 1173 (9th Cir. 2005) ....................................................21, 26

**Cases—continued**

*Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*,
2022 WL 137547 (9th Cir. Jan. 14, 2022)...........................................53

*Cal. Spine & Neurosurgery Inst. v. JP Morgan Chase & Co.*,
2019 WL 7050113 (N.D. Cal. Dec. 23, 2019)....................................42

*CarMax Auto Superstores Cal. LLC v. Hernandez*,
94 F. Supp. 3d 1078 (C.D. Cal. 2015) ..............................................57

*Carmen v. S.F. Unified Sch. Dist.*,
237 F.3d 1026 (9th Cir. 2001) ..........................................................28

*Cath. Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*,
321 F. App'x 563 (9th Cir. 2008) ......................................................47

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*,
497 F.3d 972 (9th Cir. 2007) .............................................................47

*Chinitz v. Intero Real Est. Servs.*,
2021 WL 1375837 (N.D. Cal. Apr. 12, 2021)...................................28

*Cigna Corp. v. Amara*,
563 U.S. 421 (2011)..........................................................33, 34, 35

*Conkright v. Frommert*,
559 U.S. 506 (2010)..........................................................................45

*Conn. Gen. Life Ins. Co. v. Grand Ave. Surgical Ctr., Ltd.*,
181 F. Supp. 3d 538 (N.D. Ill. 2015)................................................54

*Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*,
878 F.3d 478 (5th Cir. 2017) .........................................22, 23, 27, 45

*Cromwell v. Equicor-Equitable HCA Corp.*,
944 F.2d 1272 (6th Cir. 1991) .........................................................50

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) ...............................................39, 40, 45

*Devereaux v. Abbey*,
263 F.3d 1070 (9th Cir. 2001) .............................................20, 30

**Cases—continued**

*Dragan v. Valladolid*,
2021 WL 3260605 (C.D. Cal. Apr. 5, 2021), *aff'd*, 2022 WL
779911 (9th Cir. Mar. 14, 2022)............................................................56

*Ehrensaft v. Dimension Works Inc. Long Term Disability Plan*,
33 F. App'x 908 (9th Cir. 2002)............................................................23

*Enigma Mgmt. Corp. v. MultiPlan, Inc.*,
994 F. Supp. 2d 290 (E.D.N.Y. 2014)..................................................41

*Evans v. Safeco Life Ins. Co.*,
916 F.2d 1437 (9th Cir. 1990)..............................................................39

*Fast Access Specialty Therapeutics, LLC v. UnitedHealth Grp., Inc.*,
532 F. Supp. 3d 956 (S.D. Cal. 2021)............................................*passim*

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989)................................................................................21

*Forsberg v. Pac. Nw. Bell Tel. Co.*,
840 F.2d 1409 (9th Cir. 1988)..............................................................28

*Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health &
Welfare Tr. Fund*,
538 F.3d 594 (7th Cir. 2008)................................................................51

*Gerosa v. Savasta & Co.*,
329 F.3d 317 (2d Cir. 2003)..................................................................51

*Glendale Outpatient Surgery Ctr. v. United Healthcare Servs.*,
805 Fed. App'x 530 (9th Cir. 2020)....................................................36

*Greany v. W. Farm Bureau Life Ins. Co.*,
973 F.2d 812 (9th Cir. 1992)................................................................41

*Harlick v. Blue Shield of Cal.*,
686 F.3d 699 (9th Cir. 2012)................................................................21

*Hinkle ex rel. Est. of Hinkle v. Assurant, Inc.*,
390 F. App'x 105 (3d Cir. 2010)..........................................................23

**Cases—continued**

*Holmes v. Harris*,
2021 WL 2272395 (C.D. Cal. May 19, 2021), *aff'd*, 2022 WL
1198204 (9th Cir. Apr. 22, 2022) ....................................................57

*Hospice of Metro Denver, Inc. v. Grp. Health Ins. of Okla., Inc.*,
944 F.2d 752 (10th Cir. 1991) .......................................................51

*In Home Health, Inc. v. Prudential Ins. Co. of Am.*,
101 F.3d 600 (8th Cir. 1996) .........................................................51

*Ingersoll-Rand Co. v. McClendon*,
498 U.S. 133 (1990)......................................................................48

*Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*,
349 F.3d 1098 (9th Cir. 2003) ......................................................35

*Jones v. Life Ins. Co. of N. Am.*,
2016 WL 3257781 (N.D. Cal. June 14, 2016), *aff'd*, 716 F. App'x
584 (9th Cir. 2017).........................................................................34

*Kennedy v. Conn. Gen. Life Ins. Co.*,
924 F.2d 698 (7th Cir. 1991) ..................................................23, 29

*LD v. United Behav. Health*,
2020 WL 5074195 (N.D. Cal. Aug. 26, 2020) ...............................37

*Leon v. Quintiles Transnat'l Corp.*,
300 F. App'x 558 (9th Cir. 2008)...................................................30

*Lordmann Enters., Inc. v. Equicor, Inc.*,
32 F.3d 1529 (11th Cir. 1994) .......................................................51

*Mabry v. ConocoPhillips Co.*,
2021 WL 189144 (D. Alaska Jan. 19, 2021), *order vacated in part
on reconsideration*, 2021 WL 2805358 (D. Alaska July 6, 2021) ....................48

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)......................................................................32

*Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*,
904 F.2d 236 (5th Cir. 1990) ..................................................51, 52

**Cases—continued**

*Morris B. Silver M.D., Inc. v. Int'l Longshore & Warehouse etc.*,
2 Cal. App. 5th 793 (2016) ...................................................49

*Mortimer v. Baca*,
594 F.3d 714 (9th Cir. 2010) ...............................................53

*Moyle v. Golden Eagle Ins. Corp.*,
239 F. App'x 362 (9th Cir. 2007) .........................................38

*Mull for Mull v. Motion Picture Indus. Health Plan*,
865 F.3d 1207 (9th Cir. 2017) .........................................34, 35

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*,
952 F.3d 708 (5th Cir. 2020) ...........................................22, 29

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*,
2018 WL 3738086 (S.D. Tex. Aug. 7, 2018), *aff'd*, 952 F.3d 708...................27

*O.C. Multispecialty Surgery Ctr. v. Blue Cross & Blue Shield of Kan. City*,
2022 WL 3013137 (C.D. Cal. Feb. 8, 2022) .......................................49

*Pac. Recovery Sols. v. Cigna Behav. Health, Inc.*,
2021 WL 1176677 (N.D. Cal. Mar. 29, 2021) ....................................42

*Pac. Recovery Sols. v. United Behav. Health*,
481 F. Supp. 3d 1011 (N.D. Cal. 2020)............................................42

*Paulsen v. CNF Inc.*,
559 F.3d 1061 (9th Cir. 2009) ..............................................44

*Peterson v. Soo Line R. Co.*,
977 F.2d 590 (9th Cir. 1992) ...........................................40, 41

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
967 F.3d 218 (3d Cir. 2020) .................................................51

*Prichard v. Metro. Life Ins. Co.*,
783 F.3d 1166 (9th Cir. 2015) ...............................................34

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
141 S. Ct. 474 (2020)........................................................48

**Cases—continued**

*Sheet Metals Workers' Int'l Ass'n. Loc. Union No. 359 v. Madison
    Indus, Inc. of Ariz.*,
    84 F.3d 1186 (9th Cir. 1996) ................................................................32

*Snow v. Standard Ins. Co.*,
    87 F.3d 327 (9th Cir. 1996), *overruled on other grounds*, 175 F.3d
    1084 (9th Cir. 1999) (en banc)............................................................26

*Stanford Hosp. & Clinics v. Multinat'l Underwriters, Inc.*,
    2008 WL 5221071 (N.D. Cal. Dec. 12, 2008)....................................55

*Stephan v. Unum Life Ins. Co. of Am.*,
    697 F.3d 917 (9th Cir. 2012) ..............................................................21

*Stern v. Zielke*,
    2018 WL 6131587 (C.D. Cal. Oct. 23, 2018) ....................................57

*Stolte v. Securian Life Ins. Co.*,
    621 F. Supp. 3d 1034 (N.D. Cal. 2022)...............................................34

*Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*,
    2017 WL 4517111 (N.D. Cal. Oct. 10, 2017) ....................................49

*Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*,
    17 F.4th 950 (9th Cir. 2021) ...............................................................19

*Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co.*,
    520 F. Supp. 2d 1184 (C.D. Cal. 2007) ..............................................55

*The Meadows v. Emps. Health Ins.*,
    47 F.3d 1006 (9th Cir. 1995) ......................................................*passim*

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,
    594 F.2d 730 (9th Cir. 1979) ..............................................................32

*Tingey v. Pixley-Richards W., Inc.*,
    953 F.2d 1124 (9th Cir. 1992) .......................................................40, 41

*Tri-Valley CAREs v. U.S. Dep't of Energy*,
    671 F.3d 1113 (9th Cir. 2012) ............................................................56

**Cases—continued**

*Turner v. Burlington N. Santa Fe R.R. Co.*,
  338 F.3d 1058 (9th Cir. 2003) ........................................56

*U.S. Fid. & Guar. Co. v. Lee Invs. LLC*,
  2008 WL 5101540 (E.D. Cal. Dec. 2, 2008) .....................53

*Webb v. The Hartford Fin. Servs. Grp., Inc.*,
  608 F. Supp. 2d 1218 (C.D. Cal. 2009) ...........................29

*Wise v. Verizon Commc'ns, Inc.*,
  600 F.3d 1180 (9th Cir. 2010) ...........................39, 43, 48

*Wit v. United Behav. Health*,
  58 F.4th 1080 (9th Cir. 2023) .................................31, 38

**Statutes**

18 U.S.C. § 220 ....................................................................20

28 U.S.C. § 1332(a) .................................................................3

29 U.S.C. § 1132(a) .........................................................*passim*

29 U.S.C. § 1144(a) .........................................................*passim*

Cal. Ins. Code § 750 ...........................................................20

**Other Authorities**

29 C.F.R. § 2560.503-1(g) ..................................................25

Fed. R. Civ. P. 56(c) ...........................................................32

Fed. R. Civ. P. 56(d) ...........................................................33

Fed. R. Civ. P. 59(e) .......................................................56, 57

Fed. R. Civ. P. 60(b) .......................................................56, 57

Central District of California Local Rule 7-3 .........................4, 17, 19, 57

Central District of California Local Rule 7-18 .......................4, 17, 19, 56

**Other Authorities—continued**

Moore's Fed. Prac. 3rd § 131.30(2)(c)(i).................................................................53

## **INTRODUCTION**

In early 2015, Defendants-Appellees Cigna Health and Life Insurance Company and Cigna Behavioral Health, Inc. (collectively, "Cigna") uncovered evidence that a now-bankrupt "for-profit" substance abuse provider called Sure Haven, Inc. was engaging in a scheme to waive patient cost share (called "fee-forgiving"). Fee-forgiving dramatically increases plan costs and improperly disincentivizes members from seeking more affordable care in violation of their healthcare plans. Not surprisingly, the ERISA plans at issue on this appeal exclude coverage when fee-forgiving occurs, and Cigna therefore denied the subject claims pursuant to those plan terms. Ultimately, these benefit claims were purchased from the bankruptcy estate by Plaintiff-Appellant Bristol SL Holdings, Inc. ("Bristol"), which brought this lawsuit years later seeking payment for Sure Haven's denied claims.

Based on these facts, the district court correctly held that Cigna was entitled to summary judgment on Bristol's ERISA § 502(a)(1)(B) claim. Courts have upheld Cigna's interpretation of the plan language at issue for decades, and Cigna's denials were supported by substantial evidence, including admissions of fee-forgiving by Sure Haven and corroboration by an independent review organization.

The district court also granted summary judgment on Bristol's state law contract claims based on the same benefit claims that were denied for fee-forgiving,

1

because they "relate to" the ERISA plans at issue and are therefore preempted under ERISA § 514(a). Any other result would allow Bristol to side-step a national interpretation of ERISA plans by merely seeking payment of plan benefits through repackaged state law claims. This is precisely the result Congress sought to avoid by enacting § 514(a)'s broad preemptive reach, which is meant to avoid inconsistent state law relief and to enforce uniform federal standards for ERISA plans.

Contrary to what Bristol says in its Opening Brief (the "Brief" or "Br."), the district court's decision is also entirely consistent with this Court's prior decision in this case. In that appeal, this Court reversed the district court's dismissal of Bristol's § 502(a)(1)(B) claim for lack of ERISA standing, holding that Bristol could assert an ERISA claim as an assignee of Sure Haven, which itself was an assignee of ERISA plan members. This Court explicitly did not opine on the merits of the ERISA claim, however, which are addressed on this appeal.

This Court also reversed the district court's prior decision granting summary judgment to Cigna on Bristol's state law oral and implied contract and promissory estoppel claims. Critically, however, the Court explicitly took no position on whether those state law claims were preempted by ERISA. These issues were remanded to the district court, which held that Cigna could amend its pleadings to assert an ERISA preemption defense in light of this Court's decision, and further ordered the parties to engage in discovery regarding the ERISA claim. This new

evidence conclusively showed that preemption applied and that Cigna was entitled to summary judgment because these routine calls did not, and could not, create binding obligations. Critically, the summary judgment ruling at issue is fundamentally based upon evidence adduced in discovery after remand from this Court.

Unable to dispute the facts or the district court's reasoning, Bristol's Brief attempts but fails to rewrite this record and the law. Ultimately, Bristol's Brief boils down to a meritless argument that the district court's decision leaves Bristol without a remedy. Br. at 33. This Court specifically provided Bristol a remedy in § 502(a)(1)(B) in the last appeal. Bristol just wasn't entitled to payment under the ERISA plans at issue, however, because, as the assignee of Sure Haven, Bristol was bound by the consequences of Sure Haven's improper conduct.

Accordingly, the district court's order granting Cigna's motion for summary judgment should be affirmed.

## STATEMENT OF JURISDICTION

Jurisdiction in this Court is uncontested. Pursuant to Ninth Circuit Local Rule 28-2.2(a)-(c):

1.    The statutory basis for subject matter jurisdiction in the district court was 28 U.S.C. § 1332(a).

2.     The judgment is final pursuant to the district court's entry of the Final Summary Judgment Order on December 9, 2022, 1-ER-2, and denial of Bristol's Motion to Alter/Amend Alternative Vacate under Fed. R. Civ. P. 59 and 60 on February 7, 2023, 1-ER-14.

3.     Bristol's Notice of Appeal, 3-ER-403, and Amended Notice of Appeal, 3-ER-406, were timely.

## QUESTIONS PRESENTED

Bristol's appeal presents three issues for review by this Court:

1.     Did the district court err by granting summary judgment on Bristol's ERISA § 502(a)(1)(B) claim in holding that Cigna did not abuse its discretion in denying the claims at issue for fee-forgiving?

2.     Did the district court properly grant summary judgment on Bristol's state law breach of oral contract, breach of implied contract, and promissory estoppel claims because these claims were preempted under ERISA § 514(a) and Cigna is otherwise entitled to judgment on the merits of these claims?

3.     Did the district court err by denying Bristol's motion for reconsideration of its summary judgment decision after Bristol failed to follow the Central District of California's Local Rules 7.3 and 7.18 and otherwise provide any substantive basis for the district court to reconsider its summary judgment order?

## STATEMENT OF THE CASE

### A.    The Parties.

Sure Haven, and its parent company, Solid Landings Behavioral Health, Inc., (collectively, "Sure Haven") is a now-bankrupt ███████ substance abuse provider in California.  2-ER-17; 4-SER-673.  Sure Haven was owned by ████ ██████████████████████████████████, who are also the owners of Bristol, which purchased the assets of Sure Haven, including insurance claims held by Sure Haven, in the bankruptcy for $2,450,000.  4-SER-676–77, 80; 3-SER-565.

Cigna is a healthcare company that primarily provides claims administration services to employer plan sponsors who wish to provide their employees access to medical coverage under self-funded benefit plans governed by ERISA.  1-SER-81.  These ERISA benefit plans set the terms and limitations of that coverage, and delegate to Cigna "the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plans."  2-ER-248; 2-ER-310; *see also* 1-SER-84–85.

### B.    Cigna's SIU Investigation of Sure Haven.

As part of the services Cigna offers to protect plan sponsors and members, Cigna's Special Investigations Unit ("SIU") works to identify suspicious claims, stop payments to providers who commit fraud, and work to detect, prevent, and prosecute health insurance fraud.  1-SER-54.  While Cigna is paid various fees for

services provided to plan sponsors, Cigna is not paid for the savings generated by Cigna's SIU. 1-SER-56.

In April of 2014, Cigna's SIU began investigating a referral of potential excessive charges and unnecessary urine testing by Sure Haven. 3-ER-313–14. Cigna's preliminary analysis, which reviewed Sure Haven's claims data showing very high cost-share obligations and out-of-state services, suggested potential misrepresentation of services and fee-forgiving. 3-ER-330.

Fee-forgiving occurs when a provider does not bill and collect the full cost share obligation for a patient. 1-SER-54. For example, Cigna-administered plans divide responsibility for "Covered Expenses" between the member and the plan; the member is required to pay "[a]ny applicable Copayments, Deductibles or limits," and "Coinsurance," which is defined as "the percentage of charges for Covered Expenses that an insured person is required to pay under the plan." 2-ER-303–04.

Payment of cost-share is required under Cigna-administered plans because the waiver of patients' cost-share destroys the financial incentives that the plans use to steer patients toward lower-cost, in-network providers. 1-SER-55. Moreover, if members are not paying their cost-share, they have no incentive to avoid or investigate unnecessary and excessive healthcare costs from their providers. 1-SER-56. Ultimately, fee-forgiving exploits self-funded health plans, which end up footing the bill for egregious charges. *Id*.

6

Given that Sure Haven was suspected of fee-forgiving, Cigna's SIU sent out 30 verification of service letters ("VOS Letters") to Cigna members who had received treatment from Sure Haven in the past year to determine if they paid their cost-share. 3-ER-323–24, 26. Of the three responses Cigna received, none were billed, and one response indicated, "I was told although my insurance did not cover the full amount the remainder was given a scholarship, they said I did not have to pay." *Id.*

Based on these responses from the VOS Letters, Cigna's investigator assigned to the Sure Haven case, Christina Feierstein, made an undercover call to Sure Haven on February 20, 2015, to determine what Sure Haven was telling potential patients about their cost-share. 2-ER-271–72; 3-ER-321. She called the number on Sure Haven's website and spoke to a Sure Haven representative named Steve Post, who said he was a billing representative. 2-ER-275; 3-ER-321. During the call, Mr. Post told Ms. Feierstein that all she had to pay was a "200.00 copay for medicine and insurance wi[ll] cover the rest including cost for travel." 2-ER-278; 3-ER-321. Mr. Post then followed up that call with an email to Ms. Feierstein stating, "[w]e will bill your insurance for payment at this rate" and "[a]ny portion left unpaid by your insurance will be considered a full financial scholarship leaving you with a zero balance." 2-ER-334. This was fee-forgiving.

Given the VOS Letter responses and the admission by Sure Haven's

representative, Cigna's in-house counsel, William Welch, wrote a letter on February 26, 2015, to Sure Haven's CEO Steven Fennelly stating, "Cigna has learned that [Sure Haven] does not bill and collect the full out-of-network cost share obligation of Cigna customers and that the charges submitted by [Sure Haven] are not real charges . . ." 3-ER-336.

The letter explained that Sure Haven's "practice of waiving the cost share obligations of Cigna customers violates the terms and conditions of Cigna health benefits plans and renders your charges non-coverable." *Id.* The letter pointed to standard language in Cigna-administered benefit plans, which specifically excludes "charges which you [the member] are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan." 3-ER-336–37; 1-ER-307; 1-SER-77–78; 1-SER-55.

Going forward, "[w]henever [Sure Haven] submits a claim for medical benefits to Cigna in the future, Cigna will expect [Sure Haven] to provide Cigna with documentary proof of the Cigna customer's payment . . . ." 3-ER-336–37. That proof "should consist of a credit card receipt, a cancelled check, or some other form of documentation showing that the Cigna customer actually incurred and personally paid the expense . . . ." *Id.* If Sure Haven did not provide the proof of payment, "Cigna will deny the claim until [Sure Haven] submits the requested documentation." 3-ER-338. The letter explained that "[t]his procedure will

8

continue until [Sure Haven] can establish to Cigna's satisfaction that it has ended the practice of waiving or forgiving a Cigna customer's applicable full out-of-network cost share." *Id.*

███████████████████████████████████████

███ 4-SER-722–24, 27.

A week later, on March 5, 2015, a fee-forgiving flag was placed on Sure Haven. 1-SER-104; 1-SER-99. For ***each*** claim thereafter, when Sure Haven did not provide proof of payment upon submission of the claims—which was true of all claims at issue—Cigna provided an explanation of payment ("EOP") with a remark code identifying the above-mentioned plan language indicating the claim had been denied for fee-forgiving, but asking for proof of payment and providing Sure Haven with the procedure to appeal the benefit determination. 4-SER-765;1-SER-92; *see also* 1-SER-88–89; 2-ER-308–09.

### C. Cigna's SIU Post-Flag Investigation of Sure Haven.

After applying the fee-forgiving flag, Cigna continued to investigate Sure Haven. For example, on May 20, 2015, Cigna provided Sure Haven the opportunity to provide full medical records and billing records for 10 patients so that the SIU could review those records. 3-ER-345. On June 12, 2015, Sure Haven's billing director, Thomas Meena, sent Ms. Feierstein a letter providing those medical records, as well as a chart noting that that only 1 out of 10 of the patients may have

paid any kind of deductible. 3-ER-341; 2-ER-294. A few weeks later, Mr. Meena sent Ms. Feierstein additional packets of documents unrelated to the May 20, 2015 medical records request suggesting they showed payment of member's cost share for claims that had already been submitted and denied. 2-ER-291. But, as Ms. Feierstein observed when she reviewed these documents, they, in fact, only showed more evidence of fee-forgiving. 2-ER-291; 3-ER-332.

Of the 42 sets of patient records that Sure Haven sent to Cigna in June of 2015 that are at issue in the lawsuit, none of those records provided actual evidence of payment, such as cancelled checks or receipts showing payment, which Cigna had requested in the February 26, 2015 letter. 1-SER-58–59. Moreover, those records showed that Sure Haven did not collect hundreds of thousands of dollars in member cost-share that was owed. 1-SER-59. This was not evidence of payment, but further proof of fee-forgiving. *See, e.g.*, 4-SER-737–38; 4-SER-804–08; 4-ER-520, 28, 33.

Ms. Feierstein also sent the medical records she received to an independent review organization called Prest and Associates, Inc. ("Prest") to review the records. 2-ER-281–82. On November 13, 2015, Prest provided Cigna with a 63-page report, which found "[i]nconsistent provision of medical treatment," services "often performed by person with no evidence of qualification as a mental health professional,"; Urine toxicology screens were "[m]assively abused," and "frequent 'double billing.'" 1-SER-109–10; 3-ER-316. As for fee-forgiving, there "was

[o]nly limited evidence that the [facility ever] billed for co-pays or deductibles;" and "in the therapy notes" it was noted "that the patient didn't have to pay for anything." 3-ER-316.

After verifying these fraudulent billing practices through Prest's report, Cigna sent Sure Haven another letter explaining Cigna's findings and seeking $500,000 in overpayments. 3-ER-353. Cigna then updated the flag on Sure Haven to also deny claims for "services not rendered as billed." 2-ER-286–87; 3-ER-315. The investigation was then "closed" from the SIU's perspective. 3-ER-315.

Years later, in 2018, after Bristol purchased the claims from Sure Haven, Bristol provided Cigna with additional records as part of settlement negotiations prior to filing Bristol's lawsuit, or as discovery in the lawsuit. *See* Br. at 11-12. To be clear, though, these records showed, at most, scant evidence of partial payments for a small number of claims buried amongst records still showing thousands of dollars owed in cost-share. *See*, *e.g.*, 5-ER-982-86 ████████████

████████████████████████████████████████

██████████████. This was still evidence of fee-forgiving. As part of these settlement negotiations, Cigna and Bristol also entered into a tolling agreement, but

████████████████████████████████████████

████████████████████████████████. 5-ER-799–800.

11

**D.     Bristol's Lack of Evidence Regarding VOB and Authorization Calls.**

Completely ignoring the SIU's investigation and Cigna's denial of claims for fee-forgiving, Bristol alleges that for each of the hundreds of claims at issue, Cigna made a separate, unambiguous promise to pay Bristol certain percentages of UCR on every routine verification of benefits ("VOB") and pre-authorization call.  2-ER-25.  This allegation is baseless.

To understand why, it is necessary to understand Cigna's business.  One of the services Cigna provides the individuals covered by benefit plans is to provide access to a network of providers, who have contracted to accept discounted fees in exchange for being part of Cigna's provider network ("in-network" providers).  2-ER-250.  The effect of these in-network relationships is to help control costs for members and health plans.  *Id*.  For providers not part of Cigna's network ("out-of-network" providers), Cigna does not have a contractual arrangement with the provider to pay certain rates, and the provider can charge whatever the provider wants, but ultimately payment will be determined by the benefit plan.  2-ER-248, 250, 253–54, 257.  To incentivize members to use lower-cost in-network providers, health plans may not cover out-of-network care at all or may require a member to pay substantially more out of pocket to use out-of-network providers.  1-SER-55.

Out-of-network providers like Sure Haven routinely contact Cigna by phone on VOB calls, prior to any services being rendered, to determine if the patient has

out-of-network benefits and to determine whether the provider will ultimately accept the patient for treatment. 4-ER-475, 478–79. In addition, some health benefits plans require pre-authorization of services to determine medical necessity prior to certain treatments, and providers like Sure Haven would routinely call to receive pre-authorization. 4-SER-758. These routine calls do not and cannot create a contract or a promise to pay as Bristol claims, however, particularly in this case.

For example, Cigna's February 26, 2015 letter to Sure Haven **before** any VOB and authorization calls told Sure Haven that Cigna would be denying claims for fee-forgiving absent proof of payment. 3-ER-339. This letter was not in the record for the prior appeal in this case. In the letter, Cigna informed Sure Haven of the following: that (1) "a request for benefits information, pre-authorization or pre-certification is not a promise or guarantee of coverage or payment"; (2) "Cigna representatives who respond to such requests do not have authority to bind Cigna to pay at any particular rate or amount"; and that (3) "all benefits calls and the information provided therein are subject to all plan provisions." (*Id.*) ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████     4-SER-834 (emphasis added); 4-SER-845 (emphasis added).

13



4-ER-494–495; 4-SER-755; 4-SER-812; 4-SER-814.

4-ER-485, 4-ER-488.

4-SER-718–19; 4-ER-490–91.

Moreover, even if there had been conversations about "UCR," which there is no evidence of, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. 4-ER-482. So too does Bristol's complaint. 2-SER-545–48. And so does Bristol's Brief. Br. at 52.

Regardless, in addition to failing for lack of evidence, Bristol's contractual theory also contravenes the necessities of our health care system. There is simply no way that Cigna could agree, as a claims administrator, to payment of claims (or a percentage of UCR on claims) *before* any services are rendered, any medical bills and other claim forms have been submitted, the amount of charges assigned to these yet unprovided services, or whether the terms of the operative benefit plans were satisfied.

### E.    Procedural History

Bristol filed its complaint against Cigna on April 15, 2019, which the district court dismissed.  3-SER-634.  Bristol filed its First Amended Complaint ("FAC") on October 28, 2019, 1-SER-183, and the district court dismissed most claims, including Bristol's ERISA claim, which the court held Bristol did not have standing to bring as an assignee of an ERISA assign.  1-SER-172.  The district court did not dismiss three claims: (1) oral contract; (2) implied contract; and (3) promissory estoppel (the "State Law Claims").  *Id.*  Bristol amended again and filed the Second Amended Complaint ("SAC").  2-ER-16.  But on September 23, 2020, the district court granted Cigna's motion for summary judgment on Bristol's three remaining claims.  2-ER-116.

After Bristol appealed, this Court reversed the dismissal of Bristol's ERISA claim, holding that Bristol had standing to sue as an assignee of an assignee, and reversed the grant of summary judgment on Bristol's breaches of oral and implied contract, and promissory estoppel causes of action.  1-SER-123.  Importantly, this Court expressly took "no position on whether any or all of Bristol's state law claims are preempted by ERISA."  *Id.* at n.3.

After remand, the district court permitted additional discovery on the ERISA administrative record and allowed the parties to amend their pleadings, including permitting Cigna to add an ERISA preemption defense, with agreement from Bristol

15

on both points. 1-SER-120; 1-SER-114. The parties conducted significant additional discovery on Bristol's ERISA claim, which also necessarily resulted in additional discovery relating to the three State Law Claims. This created a more developed record for those claims than was before this Court previously.

After this additional discovery period, Cigna moved for summary judgment on all of Bristol's remaining claims on October 26, 2022, demonstrating that Bristol's ERISA and State Law Claims failed for a number of reasons in light of the additional evidence adduced in discovery. 2-ER-202. On December 9, 2022, the district court granted Cigna's motion on the ERISA claim, and found the State Law Claims were preempted under ERISA § 514(a), without reaching the rest of Cigna's arguments. *See generally* 1-ER-2.

Specifically, the district court held that Cigna was entitled to summary judgment on the ERISA claim because Cigna "did not abuse its discretion in its benefits determinations" given that Cigna's "reading of the Plan language [wa]s not only reasonable but likely the best reading," finding it "highly persuasive" that other courts have recognized that Cigna's interpretation was reasonable. 1-ER-10. The district court also found "Cigna's denial of benefits also rests on a substantial foundation" given the evidence regarding Cigna's investigation of Sure Haven. *Id.*

On the State Law Claims, the district court held that Bristol's claims "are deeply intertwined with the Plan" because Bristol is standing in the shoes of Sure

16

Haven as an assignee seeking payment from Cigna for services provided to members of Cigna-administered ERISA plans.  1-ER-12.  Specifically, the district court found that Sure Haven called Cigna to verify benefits under each patient's plan and to seek authorization when required by the applicable plan before providing treatment. Thus, the "Plan is the reason Sure Haven called to verify benefits and seek authorization to provide services to Cigna-insured patients," which then "led to Cigna's alleged promise to pay a percentage of the UCR for those services."  *Id.*

On January 6, 2023, Bristol filed a motion for reconsideration.  3-ER-361. While the motion for reconsideration did not raise any issues that merited reconsideration under this Court's precedent, the district court did not reach the merits of the motion, denying the motion on February 7, 2023 as untimely under L.R. 7-18, which requires a motion for reconsideration to be filed within 14 days, and deficient under Local Rule 7-3, because Bristol admittedly had not met and conferred with Cigna 7 days before the motion was filed.  1-ER-14; 1-SER-13–14.

## SUMMARY OF ARGUMENT

Cigna denied the health benefit claims at issue in this litigation pursuant to ERISA plan terms because Sure Haven was engaged in fee-forgiving.  This is undisputed, and therefore dispositive of both Bristol's ERISA § 502(a)(1)(B) claim and State Law Claims.

*First*, Cigna did not abuse its discretion by denying Sure Haven's claims and

therefore the § 502(a)(1)(B) claim fails. Cigna's interpretation of the benefit plan language at issue has been upheld by courts around the country, including both the Fifth and Seventh Circuits. So even if this Court were to disagree with Cigna's interpretation, the fact other courts have agreed with Cigna is enough to show that Cigna's interpretation was at least reasonable. Cigna also adduced substantial evidence of fee-forgiving, including oral and written admissions by a Sure Haven representative, which was later corroborated through investigation by an independent third-party review organization.

On appeal, Bristol primarily raises arguments suggesting that *de novo* review should apply. Bristol is incorrect. But to be clear, under any standard of review, Cigna's conduct was proper.

***Second***, Bristol's State Law Claims are preempted under ERISA § 514(a) because they both make "reference to" and are made in "connection with" an ERISA plan. There is no dispute that the underlying benefit claims at issue were assigned from ERISA plan members and were denied by Cigna for fee-forgiving pursuant to ERISA plan terms. Moreover, the routine calls Bristol relies upon were made to confirm benefits and obtain authorizations pursuant to the plans, and even Bristol admits that the amount Bristol claims it should be paid would be determined by the plans at issue. Allowing Bristol to assert repackaged state law claims to avoid denials made pursuant to interpretations of national ERISA plans is exactly the

reason ERISA § 514(a) preemption even exists. Thus, the District court should be affirmed.

In addition, while the district court did not reach the issue, Bristol's State Law Claims fail because no contract could have been formed after Cigna's February 26, 2015 letter, before any alleged promise of payment at issue, specifically telling Sure Haven the claims at issue would be denied absent proof of payment. Thus, the State Law Claims fail for this independent reason.

***Third***, it is undisputed that Bristol did not follow the Central District's Local Rules 7.3 and 7.18 in filing its meritless motion for reconsideration. Nor did Bristol provide a reason under Rule 59 or 60 for reconsideration of the district court's order. Therefore, the district court did not abuse its discretion in denying the motion, and should be affirmed.

Accordingly, the district court's grant of summary judgment should be affirmed in full.

## **ARGUMENT**

A district court's decision to grant summary judgment is reviewed *de novo*. *Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 959 (9th Cir. 2021). In the Ninth Circuit, a party moving for summary judgment need only show "that there is an absence of evidence to support the nonmoving party's case" to demonstrate that there is not a genuine dispute of fact

for trial. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  "Once the moving party carries its initial burden, the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.'"  *Id.* at 1076 (quoting Fed. R. Civ. P. 56(e)).

## I.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON BRISTOL'S ERISA CLAIM.

The district court correctly held that Cigna did not abuse its discretion by denying Sure Haven's claims for fee-forgiving.  Therefore, Bristol's § 502(a)(1)(B) claim fails, and the district court should be affirmed.[1]

### A.    The District Court Correctly Held that Cigna Did Not Abuse Its Discretion by Denying Sure Haven's Claims for Fee-Forgiving.

Under § 502 of ERISA, a beneficiary or plan participant may sue in federal court "to recover benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).  When the plan grants the claims administrator discretion to determine eligibility for benefits or to construe the terms of the plan, a court may

---

[1] Cigna was entitled to summary judgment on its unclean hands defense based on Sure Haven's illegal referral scheme.  Paying or offering to pay for referrals is illegal under federal law and in California.  *See, e.g.*, Cal. Ins. Code § 750; *see also* 18 U.S.C. § 220.  Contrary to Bristol's claim that the district court "rejected" this evidence (*see* Br. at 48), the district court did not need to reach those issues given the claims failed on other grounds.

only review the administrator's decision regarding benefits for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the district court correctly determined that Cigna was granted the discretionary authority to interpret the plans and determine benefits. 1-ER-9–10.

When an administrator has discretion to interpret the plan, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 706 (9th Cir. 2012) (quoting *Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009)). Under the abuse of discretion standard, "a plan administrator's decision 'will not be disturbed if reasonable.'" *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012) (quoting *Conkright v. Frommert*, 559 U.S. 506, 521 (2010)); *Alvis v. AT & T Integrated Disability Serv. Ctr.*, 377 F. App'x 673, 674 (9th Cir. 2010).

Recognizing these principles, this Court uses a three-factor test to determine whether an administrator has abused its discretion, which is if the administrator: (1) construes provisions of the plan in a way that conflicts with the plain language of the plan, (2) renders a decision without explanation, or (3) relies on clearly erroneous findings of fact. *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005). Here, the undisputed record shows that Cigna did none

21

of these things, and thus did not abuse its discretion by denying Sure Haven's claims for fee-forgiving.

*First*, the district court correctly held that Cigna's interpretation of the fee-forgiving provision was reasonable. Cigna's February 26, 2015 letter to Sure Haven states the plans at issue do not cover "[c]harges which you [the Cigna customer] are not obligated to pay or for which you [the Cigna customer] are not billed or for which you [the Cigna customer] would not have been billed except that they were covered under this plan." 3-ER-336–37. Cigna interpreted this language to mean "[i]f a Cigna customer is not obligated to pay or billed a charge, any claim for reimbursement for any part of that charge under such a contract or benefit plan is not covered." *Id.*

For decades, Cigna has consistently interpreted this plan language in this way and when challenged, multiple courts, including the Fifth and Seventh Circuits, have agreed with Cigna's reading of the plan language. *See, e.g.*, *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 952 F.3d 708, 715 (5th Cir. 2020) ("Cigna's interpretation, having relevant legal support, could not in these circumstances be an abuse of discretion.") [hereinafter "*N. Cypress II*"]; *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 485 (5th Cir. 2017) ("[T]he fact that [at least] two courts have upheld interpretations similar to that of [Cigna] is dispositive of the issue"—"arguably the fact that two courts have found

[Cigna's] interpretation of the policy language reasonable itself establishes that the interpretation does not constitute an abuse of discretion.") (quoting *Fitzgerald v. Colonial Life & Accident Ins. Co.*, 2012 WL 1030261, at *3 (D. Md. Mar. 26, 2012)); *see also Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 702 (7th Cir. 1991) (ruling that Cigna's interpretation of a nearly identical provision as imposing a fee-forgiveness restriction was legally correct).

That Cigna's plan interpretation has already been approved by multiple courts should end the abuse of discretion analysis in Cigna's favor, because, as the Fifth Circuit has held, "where an administrator's interpretation is supported by prior case law, it ***cannot*** be an abuse of discretion—even if the interpretation is legally incorrect." *Humble*, 878 F.3d at 484 (emphasis added). This would mean that, even if this Court disagreed with Cigna's interpretation, Cigna still acted reasonably by relying on an interpretation approved by other courts. This deference "serves the interest of uniformity, helping to avoid a patchwork of different interpretations of a plan" in different jurisdictions. *Id.* Many other courts, including this Court, have recognized the same exact principle. *See, e.g., Ehrensaft v. Dimension Works Inc. Long Term Disability Plan*, 33 F. App'x 908, 910 (9th Cir. 2002) (no abuse of discretion where plan chose interpretation not favored by court but where "case law is split"); *see also Hinkle ex rel. Est. of Hinkle v. Assurant, Inc.*, 390 F. App'x 105, 108 (3d Cir. 2010).

Tellingly, Bristol's Brief addresses none of these cases and does not explain how Cigna's interpretation of the plan language was incorrect, let alone unreasonable. Thus, the district court correctly held that Cigna's interpretation was not an abuse of discretion and this Court should find the same.

***Second***, the basis for Cigna's denials were clearly explained to Sure Haven multiple times. Indeed, the record is crystal clear that after Cigna's investigation substantiated Sure Haven's fee-forgiving, Cigna sent a letter to Sure Haven—before any claims were denied—that explained at length that Cigna "will ***deny*** the claim[s]" pursuant to plan terms on the basis of fee-forgiving. 3-ER-338. Cigna would reconsider that denial if Sure Haven "submits the requested documentation" showing proof of payment by the member. *Id.*

Moreover, the EOPs sent after ***each claim*** memorialized the denial and also identified the above-mentioned plan exclusion. 4-SER-765. Those EOPs also Sure Haven that Cigna would reconsider the denial "once we see proof of your payment," *id.*, and, contrary to what Sure Haven says on appeal, Br. at 50-51, included instructions for "Rights of Review and Appeal," ████████████████████████

████████████. 4-SER-763; 4-SER-733–34. Cigna also exchanged several letters with Sure Haven's representatives afterwards concerning the denials. *See, e.g.*, 3-ER-341, 56; 3-ER-349.

Despite this litany of communications from Cigna, Bristol points to *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997), arguing that Cigna did not engage in "meaningful dialogue" regarding the denial of the claims here.  Br. at 47.  In that case—unlike here—Aetna denied claims without explanation or even reviewing relevant information that could have led to a reversal of a denial. Moreover, the Court held that "had Aetna requested the needed information and offered a rational reason for its denial, it would be entitled to substantial deference." *Id.* at 1464.  As explained *supra* Sec. I.A, Cigna did this multiple times, and therefore, under *Booton*, should be entitled to "substantial deference."

Bristol also argues that Cigna's notice was insufficient because the letters and EOP statements were not formal denials "per the CFRs . . . ."  Br. at 41.  But 29 C.F.R. § 2560.503-1(g) does not refer to "formal denials," and Bristol ignores that the letter and subsequent EOPs clearly said they were denials, identified the plan terms supporting that denial, as well as explaining what evidence Sure Haven needed to provide, and how Sure Haven could appeal.  This is exactly what 29 C.F.R. § 2560.503-1(g) requires.  *See* Br. at 39 (quoting 29 C.F.R. § 2560.503-1(g).)

Ultimately, given the record on appeal, there can be no question that there was an "ongoing, good faith exchange of information" here and that Cigna's notice to Sure Haven was more than sufficient.  *See Alvis*, 377 F. App'x at 674.

**Third**, Cigna's decision was not "clearly erroneous" and was, in fact, supported by substantial evidence. 1-ER-11. Indeed, a factual finding is "clearly erroneous" when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Boyd*, 410 F.3d at 1178 (quoting *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993). A plan administrator's findings of fact are not clearly erroneous "where there is substantial evidence to support the decision, that is, where there is 'relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence.'" *Snow v. Standard Ins. Co.*, 87 F.3d 327, 331-32 (9th Cir. 1996), *overruled on other grounds by Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999) (en banc).

After receiving a tip that Sure Haven may be engaged in fraudulent billing, Cigna verified Sure Haven was fee-forgiving using VOS letters and then an undercover telephone call to Sure Haven, where the representative admitted to fee-forgiving orally and in writing. 3-ER-321, 323–24; 3-ER-334; 2-ER-278. Based on this evidence, Cigna wrote the February 26, 2015 letter to Sure Haven and then later applied a fee-forgiving flag on Sure Haven's claims, denying them unless Sure Haven provided evidence of collecting the member's full cost-share. 3-ER-336–38. After placing the flag, both Cigna and the Prest reviewed records from Sure Haven further confirming that Sure Haven was not collecting cost-share. 2-ER-291; 3-ER-

332; 3-ER-316; 4-SER-737–38; 4-SER-804–08; 4-ER-520, 28, 33. Cigna provided updated findings to Sure Haven and updated its flag to deny Sure Haven's claims for services not rendered. 2-ER-286–87; 3-ER-316; 3-ER-353.

In response to this straightforward evidence, Bristol first claims that Cigna's investigation and denials were a "ruse." Br. at 44-45. But this is baseless. Courts from around the country have upheld nearly identical denials based on similar investigations and evidence of fee-forgiving. *See, e.g.*, *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 2018 WL 3738086 at \*15 (S.D. Tex. Aug. 7, 2018) [hereinafter "*N. Cypress I*"], *aff'd*, *N. Cypress II*, 952 F.3d 708 ("Where Cigna has reduced benefits payments based on survey responses, that show the healthcare provider forgave out-of-network coinsurance amounts, courts have found Cigna's actions to be supported by substantial evidence."); *Humble*, 878 F.3d at 485-486 (same); *Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, 2021 WL 2857241, at \*19 (N.D. Tex. July 8, 2021) (finding that "a sampling of medical data and plausible confirmation from the provider is 'substantial evidence'").

Bristol's also attempts to manufacture doubt about the sufficiency of Cigna's investigation. For example, despite admitting the VOS letters showed members were not billed and a "scholarship" was being offered, Bristol suggests the VOS letters merited more investigation. Br. at 45-46. But that is precisely what Cigna did when Ms. Feierstein called the phone number on Sure Haven's website. And

despite Ms. Feierstein's testimony describing that call and a subsequent written admission that Sure Haven was waiving cost-share, Bristol complains the "undercover" call was not a "smoking gun," suggesting maybe the representative was confused or acted outside their authority.[2]  *Id.*  Even after the call, Cigna sent the February 26, 2015 letter providing Sure Haven another opportunity to clarify things and provide records showing proof of payment.  3-ER-336–38.  Cigna and Prest reviewed the records Sure Haven sent months later, after the claims had been denied, and like everything else, those records further confirmed fee-forgiving.

Hoping to further confuse the record, Bristol also points to a few, cherry-picked records suggesting some partial payments.  *Compare* 1-SER-59, *with* 5-ER-982-86.  Not only were these records not cited or explained at summary judgment, *see generally* 5-ER-593-629—they were buried in thousands of pages Bristol dumped on the district court[3]—but Bristol admits they were provided in 2018 as part of settlement negotiations, *see* Br. at 11-12, which was years after the claims were

---

[2] Bristol's Brief cites no evidence suggesting it is true, but regardless, the scenario is a clear case of ostensible authority and it was reasonable for Cigna to rely on that evidence. *See, e.g.*, *Chinitz v. Intero Real Est. Servs.*, 2021 WL 1375837, at \*5 (N.D. Cal. Apr. 12, 2021).

[3] *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."); *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment.").

actually submitted to Cigna or could have been appealed.[4]  Thus, these records do not show that Cigna acted without substantial evidence either.

Ultimately, even if Bristol's arguments had any factual basis, which they do not, and even if the evidence could be interpreted differently, as Bristol claims, that is still not enough to show Cigna abused its discretion.  The law is clear that so long as Cigna had a reasonable basis to deny the claims for fee-forgiving, then Cigna's conduct is not an abuse of discretion.  As the district court correctly found, given the evidence in the record, Cigna's investigation was not "unreasonable, clearly erroneous, or an abuse of discretion." 1-ER-11.

## B.  Bristol's Arguments that *De Novo* Review Applies Were Waived but, Regardless, Are Baseless.

All but recognizing that Cigna did not abuse its discretion, Bristol offers a slew of arguments that *de novo* review should have applied instead.  But as the district court found "Bristol [made] no argument for a more skeptical standard of review" at summary judgment.  1-ER-9.  Thus, these arguments are waived and

---

[4] These records are not properly part of the administrative record for Bristol's ERISA claim since they were not before Cigna when the claims at issue were adjudicated. *See, e.g.*, *Webb v. The Hartford Fin. Servs. Grp., Inc.*, 608 F. Supp. 2d 1218, 1223-24 (C.D. Cal. 2009) (citing *Tremain v. Bell Industries, Inc.*, 196 F.3d 970, 976–77 (9th Cir.1999)).  And regardless, courts have recognized that Cigna's interpretation is reasonable even in the face of partial payment.  *See, e.g.*, *N. Cypress II*, 952 F.3d at 716 (finding Cigna's reliance on *Kennedy* to be reasonable despite argument that provider held patients responsible).

should not be considered on appeal. *See Devereaux*, 263 F.3d at 1077 ("It is well-established that an appellate court will not consider issues that were not properly raised before the district court.") (quoting *Slaven v. American Trading Transp. Co.*, 146 F.3d 1066, 1069 (9th Cir. 1998))); *see Leon v. Quintiles Transnat'l Corp.*, 300 F. App'x 558, 561 n.2 (9th Cir. 2008).

For example, Bristol makes the unsupported argument that *de novo* review should apply because Cigna was operating with a conflict of interest. Bristol did not make this argument below,[5] and it is also waived. *Devereaux*, 263 F.3d at 1077.

Even taking Bristol's argument at face value, however, Bristol cites no evidence showing Cigna operated with a conflict of interest at all; at most suggesting a conflict "may exist." Br. at 38. But hypotheticals are not enough to prevail at summary judgment. Instead, as the District Court correctly found, the only **evidence** in the record showed there was no conflict because the ERISA plans were self-funded and that Cigna did not pay claims or collect fees as a result of denying claims for fee-forgiving. 2-ER-263–64; 1-SER-56. In contrast, the two cases Bristol cites where courts considered a conflict of interest were cases where the insurance company **both** made coverage decisions and paid the claims at issue. Br. at 38

---

[5] The phrase "conflict of interest" does not appear in Bristol's summary judgment opposition at all. *See generally* 4-ER-593. And Bristol only mentions it in the motion for reconsideration to respond to the district court's finding of waiver. 3-ER-361.

(citing *Metro-Life Ins. Co. v. Glenn*, 554 U.S. 105, 114 (2008); *Harlick*, 686 F.3d at 706).

Nor would Bristol's argument that a conflict "may exist" change the outcome here because "abuse of discretion review applies to a discretion-granting plan even if the administrator has a conflict of interest." *Wit v. United Behav. Health*, 58 F.4th 1080, 1096–97 (9th Cir. 2023) (quotation omitted).  So even if the district court had applied an abuse of discretion standard "tempered by high skepticism," Cigna still did not abuse its discretion because, as explained *supra* Section I.A, Cigna's "interpretation [did] not conflict with the plain language of the Plans." *Wit*, 58 F.4th at 1097.

Bristol also suggests the district court erred and *de novo* review should apply because Cigna did not attach every plan document to its motion in order to show that Cigna was delegated discretion for all of the plans at issue.  But, given that there were over 100 plans, Cigna provided an example plan document, which contained standard language showing that Cigna has "the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plans."  2-ER-310.  This language is uncontroverted. Cigna also provided uncontroverted witness testimony that the rest of the plans at issue "give Cigna the authority to interpret and enforce the terms of those plans." 1-SER-85.  And if there is any doubt about this, Cigna pointed to Bristol's own

pleadings that admitted Cigna had discretionary authority to Cigna approve and deny claims, and determine payments to providers under the plans at issue. 2-ER-18. This Court has found that evidence like this is sufficient to carry a movant's burden at summary judgment. *See, e.g., Sheet Metals Workers' Int'l Ass'n. Loc. Union No. 359 v. Madison Indus, Inc. of Ariz.*, 84 F.3d 1186, 1194 (9th Cir. 1996) (holding that movant carried initial burden of production and was entitled to summary judgment where it provided witness testimony supported by records, and where non-moving party offered no evidence in response).

The burden then shifted to Bristol to offer evidence, not argument, that any of the plans at issue did not confer Cigna with discretionary authority. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue** for trial.'") (emphasis in original); *see also Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) (not meeting summary judgment burden by "submit[ing] conclusory and speculative affidavits that fail to set forth specific facts in support of appellant's . . . theory"). But, as the District Court recognized, Bristol did not even attempt to do that or "backup that claim" at all. 1-ER-9.

On appeal, Bristol tries to make excuses that it could not raise an actual dispute because it "doesn't have Cigna's plan documents." Br. at 35. This is false: Bristol specifically requested, and was provided the applicable plan documents in discovery.[6] *See, e.g.*, 2-ER-302; *see also* 1-SER-44. So, in reality, Bristol had every opportunity at summary judgment to find a single example of a plan document that was missing the discretionary authority language. The fact that Bristol could not, and instead argues that Cigna was required to attach every single plan for the 106 patients at issue just to further confirm undisputed facts shows how "hollow" and "baseless" Bristol's argument actually is. 1-ER-9–10.

Next, Bristol argues that the example plan Cigna provided is not enforceable because of the Supreme Court's decision in *Cigna Corp. v. Amara*, 563 U.S. 421, 438 (2011). This gets two things wrong. The first is that the document Cigna provided was the applicable plan document. In fact, the document refers to itself as "this plan" 45 times, and explains that it "takes the place of ***any document*** previously issued to you which described your benefits" and does not reference any other plan document that would control. 2-ER-302 (emphasis added).

The second is that the Ninth Circuit has recognized that *Amara* does not stand for the proposition that an SPD is unenforceable, like Bristol suggests. To the

---

[6] If this was a real concern, Bristol could have moved under Fed. R. Civ. P. 56(d) on this point. Bristol did not.

contrary, *Amara* merely holds that in the event of a conflict between an SPD and another plan document, the SPD does not control. *Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1210 (9th Cir. 2017) ("We have clarified that *Amara* addressed only the circumstance where both a governing plan document and an SPD existed, and the plan administrator sought to enforce the SPD's terms over those of the plan document.") (internal quotation marks omitted)); *cf. Prichard v. Metro. Life Ins. Co.*, 783 F.3d 1166, 1170 (9th Cir. 2015) (holding that, as in *Amara*, the Court recognized there was a conflict between the certificate, which indicated it was the plan document, and the SPD, which was not described as a plan document).

Moreover, multiple cases have held that SPDs are enforceable after *Amara*. *Stolte v. Securian Life Ins. Co.*, 621 F. Supp. 3d 1034, 1042-43 (N.D. Cal. 2022); *Jones v. Life Ins. Co. of N. Am.*, 2016 WL 3257781, at *4 (N.D. Cal. June 14, 2016), *aff'd*, 716 F. App'x 584 (9th Cir. 2017) ("After *Amara*, however, the Ninth Circuit has indicated that discretion can be granted in an SPD if the SPD is a Plan document."). In its brief, Bristol goes to great lengths to argue that these cases, like *Stolte*, are somehow bad law. But Bristol's whole argument relies on the district court case in *Mull*,[7] which was ***reversed*** by this Court for its incorrect reading of

---

[7] Bristol also cites *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 2015 WL 12778048, at *34 (C.D. Cal. Oct. 23, 2015), which also relies on the now-reversed *Mull* district court decision.

*Amara*.   865 F.3d at 1210 n.1 (reversing district court and rejecting Plaintiff's argument SPD "cannot constitute the relevant basis of payments").  So, in fact, it is Bristol who relies on bad law.

Finally, Bristol raises for the first time the waived argument that *de novo* review should have applied because Cigna did not "exercise discretion claim by claim" and did not follow correct claim procedures.  But, as explained *supra* Sec. I.A, Cigna reviewed each claim, and they were denied because Sure Haven provided no proof of payment upon submission for any claim.  Cigna also reviewed the additional records Sure Haven provided afterwards, which also did not show proof of payment.  Moreover, neither of the cases Bristol relies upon prohibits a claims administrator from denying claims pursuant a fee-forgiving flag.  *See, e.g.*, *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1106 (9th Cir. 2003) (applying *de novo* reviewed where claims "deemed denied" due to a failure to issue a final determination within the permitted time limits under the plan and the applicable statute after an appeal); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 972 (9th Cir. 2006) (relying on decision in *Jebian*).  Indeed, the case law is to the contrary on that point.  *See supra* Sec. I.A (citing cases).

## C.  Even Under *De Novo* Review, Bristol's ERISA Claim Still Fails for Multiple Reasons.

Finally, even if *de novo* review applied, Bristol's § 502(a)(1)(B) claim still fails.  Under *de novo* review, a court accords no deference to the plan administrator's

35

decision and "simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie*, 458 F.3d at 963. As set forth *supra* in Sec. I.A, Cigna's denial of Sure Haven's claims was based on a correct reading of the plan language upheld by several courts and was supported by evidence of fee-forgiving. In contrast, while Bristol argues that *de novo* review applies several times, it offers no analysis or evidence that even under *de novo* review Cigna's denial of claims was incorrect. Thus, Bristol's ERISA claim fails for this independent reason.

Bristol's ERISA claim would fail under *de novo* review for two additional reasons. ***First***, Cigna's motion for summary judgment demonstrated that Bristol's claim failed to offer any basis in any Cigna-administered plan that would entitle Bristol to its full billed charges or UCR. In its Brief, Bristol clarifies it is not seeking its full billed charges, only a "percentage of the billed charge (the UCR)." Br. at 52. This is a distinction without a difference, however, because Bristol has not identified any plan language in any ERISA plan that entitles Bristol to billed charges or UCR or a percentage of either. *Id.*

This failure is enough to dismiss Bristol's claim at the Rule 12 stage, let alone at summary judgment. *Glendale Outpatient Surgery Ctr. v. United Healthcare Servs.*, 805 Fed. App'x 530, 531 (9th Cir. 2020) (affirming dismissal of claim under § 502(a)(1)(B) where plaintiff relied on "generalized allegations" about plan

breaches but failed to identify "any plan terms that specify benefits that the defendants were obligated to pay but failed to pay"); *LD v. United Behav. Health, 2020 WL 5074195, at \*3 (N.D. Cal. Aug. 26, 2020)* (dismissing ERISA claim where provider sought full billed charges, but "d[id] not identify the terms of their plans that require United to reimburse [provider] for IOP services based on UCR or at 100% of [provider's] billed charges"). Thus, Bristol's claims fails for this reason under *de novo* review.

**Second**, this Court has held that "[a]s a general rule, an ERISA claimant must exhaust available administrative remedies before bringing a claim in federal court." *Barboza v. Cal. Ass'n of Pro. Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011). Bristol does not dispute it failed to appeal the denials for the 106 claims at issue and instead argues it was futile to exhaust administrative remedies because Cigna's claim procedures were somehow inadequate under the C.F.R. regulations. Br. at 50. But, as explained *supra* Sec. I.A, this argument is completely baseless because Cigna provided Sure Haven with notice of how to appeal and what evidence it needed to show (*i.e.* proof of payment) to successfully appeal. This same goes for Bristol's claim that Cigna waived this defense ████████████████████████████ ████████████████████████. 5-ER-799.

Moreover, Cigna's plans also required members to exhaust their administrative remedies. 2-ER-309 (stating that members only had the right to bring

a civil action under Section 502(a) of ERISA after review through internal claim procedures).) Under this Court's decision in *Wit*, this means that "application of judicially created exhaustion exceptions" like futility "would conflict with the written terms of the plan" and therefore would not even available to Bristol. *Wit*, 58 F.4th at 1098.

Thus, Sure Haven was obligated to exhaust administrative remedies, and its failure to do so is another basis to grant summary judgment to Cigna. *See, e.g., Moyle v. Golden Eagle Ins. Corp.*, 239 F. App'x 362, 364 (9th Cir. 2007); *see also Wit*, 58 F.4th at 1098.

## II. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON BRISTOL'S STATE LAW CLAIMS.

Bristol's State Law Claims, which are based on the same denied benefit claims, also fail because they are preempted by ERISA § 514(a). The district court agreed, and therefore did not reach the merits of Bristol's State Law Claims, which were futile in light of new evidence adduced during additional discovery. This provides an additional basis to affirm the district court. *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925–26 (9th Cir. 2003) (a Circuit court may affirm "judgment on any ground supported by the record, whether or not the decision of the district court relied on the same grounds . . . .").

**A.      Bristol's State Law Claims Are Preempted Under ERISA § 514(a).**

There are two kinds of ERISA preemption: preemption under ERISA § 514(a), and preemption under ERISA § 502(a).  Only the former is at issue in this case.  ERISA § 514(a) states the federal statute preempts "any and all State laws insofar as they . . . relate to any employee benefit plan" governed by ERISA.  29 U.S.C. § 1144(a).  The "relates to" standard is one of the "broadest preemption clauses ever enacted by Congress."  *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir. 1990); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (noting that ERISA has "extraordinary pre-emptive power") (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66 (1987 )).

This Court has held that there are two categories of state law claims that "relates to" a covered ERISA benefit plan under § 514(a): (1) "claims that have a 'reference to' an ERISA plan," and (2) "claims that have 'an impermissible connection with' an ERISA plan."  *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019) (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016)).  With both the "reference to" and "connection with" categories, "where 'the existence of [an ERISA] plan is a critical factor in establishing liability' under a state cause of action, the state law claim is preempted."  *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 136, 139–40 (1990)).

39

Here, Bristol does not dispute the plans at issue are ERISA plans and therefore, the district court correctly found the State Law Claims meet both the "relates to" prong—because Bristol's State law Claims were deeply intertwined with the Plan—and the "connection with" prong—because Bristol's State Law Claims "bear directly on an ERISA-regulated relationship." 1-ER-12. Thus, the district court's decision finding that Bristol's claims were preempted should be affirmed.

1. The District Court Correctly Held That Bristol's State Law Claims Have a "Reference to" the ERISA Plans.

"A state-law claim has a ''reference to' an ERISA plan' if it 'is premised on the existence of an ERISA plan' or if 'the existence of the plan is essential to the claim's survival'." *Depot*, 915 F.3d at 665 (quoting *Or. Teamster Emps. Tr. v. Hillsboro Garbage Disposal, Inc.*, 800 F.3d 1151, 1155–56 (9th Cir. 2015)). It is clear here that Bristol's State Law Claims are premised on the existence of an ERISA plan in multiple ways.

To start, this Court has recognized when the "underlying theory of the case revolves around the denial of benefits" then the claim "falls under ERISA's far-reaching preemption clause." *Tingey v. Pixley-Richards W., Inc.*, 953 F.2d 1124, 1131 n.2 (9th Cir. 1992); *Peterson v. Soo Line R. Co.*, 977 F.2d 590 (Table), 1992 WL 289558, at *2 (9th Cir. Oct. 15, 1992) (holding state law claims based on representations made by plan administrator were preempted by ERISA because "the conduct challenged was part of the administration of an ERISA plan"); *see also*

40

*Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 818 (9th Cir. 1992) (holding state law claims based on incorrect representation of coverage were preempted by ERISA where "in reality, [the plaintiff] challenge[d] the administration of ERISA plan benefits . . . ").

Here, Sure Haven was assigned the benefit claims at issue from ERISA plan members and Cigna's decision to deny payments for fee-forgiving was based on an interpretation of ERISA plan terms. Thus, the rules from cases like *Tingey* and *Peterson* apply and the State Law Claims are preempted under ERISA for that reason alone. *See, e.g* *Fast Access Specialty Therapeutics, LLC v. UnitedHealth Grp., Inc.*, 532 F. Supp. 3d 956, 974 (S.D. Cal. 2021) (claims preempted where provider alleged contracts had been made on calls where claims had been denied for failure to provide medical records); *see also* *Enigma Mgmt. Corp. v. MultiPlan, Inc.*, 994 F. Supp. 2d 290, 298-99 (E.D.N.Y. 2014) (holding that breach of contract claim was preempted by ERISA where claims were denied for fee-forgiving pursuant to ERISA plan).

Bristol's State Law Claims are also preempted because the only reason Sure Haven called Cigna to verify benefits was ███████████████████████████████████ ███████████████████████████████████████████. 4-ER-475; 4-ER-478–79. Likewise, ███████████████████████████████████ ███████████████████. 4-SER-758. Courts in this Circuit have recognized that this alone is enough to demonstrate that contract claims were premised upon the

existence of an ERISA plan and are preempted.  *Cal. Spine & Neurosurgery Inst. v. JP Morgan Chase & Co.*, 2019 WL 7050113, at *4 (N.D. Cal. Dec. 23, 2019) (finding provider's state-law claims preempted where plaintiff called "to verify . . . insurance coverage and benefits," because "[a]bsent [patient's] ERISA plan, plaintiff would have no reason to call defendant United Health 'to verify' BM's coverage . . . .").

If that was not enough, numerous courts in this Circuit have also considered claims from providers that they are entitled to "UCR" based on VOB calls, and found the plaintiff's state law claims were preempted.  *See, e.g.*, *Fast Access*, 532 F. Supp. 3d at 967 (finding that claims for breach of oral and/or implied contract, and promissory estoppel were preempted because they "premised not only on the existence of Patient A's plan, but the specific terms in Patient A's plan, or lack thereof"); *Pac. Recovery Sols. v. United Behav. Health*, 481 F. Supp. 3d 1011, 1029 (N.D. Cal. 2020) (because "the parties' understanding as to what United meant when it represented that it would pay a percentage of the UCR . . . has a connection to the terms of benefit plans"); *see also Pac. Recovery Sols. v. Cigna Behav. Health, Inc.*, 2021 WL 1176677, at *6-7 (N.D. Cal. Mar. 29, 2021) (same); *Cal. Spine*, 2019 WL 7050113, at *5 (same).

The decision in *Fast Access* is instructive.  In *Fast Access*, the court held that contract and promissory estoppel claims premised on VOB calls were preempted

because the claims were based on the specific terms of the plan concerning reimbursement. *Id.* at 967. Likewise, here, Bristol's State Law Claims claim that Cigna promised to pay Bristol's out-of-network claims at some percentage of UCR levels but then failed to do so. Even if that was right, which it is not, Bristol's witnesses and complaint admitted that the UCR amount would come from and be determined by the benefit plan. 2-SER-545–48. And, in fact, so does Bristol's Brief, which explicitly admits that "[t]o the extent any stated percentages Cigna set forth on the verification calls are inconsistent with the plans' documents, ***the plan payment rate may potentially apply*** . . . ."[8] Br. at 52 (emphasis added).

Given these admissions, there just cannot be any dispute that "the plan's terms are, a key part, if not the core part, of [Sure Haven's] claims" in this case. *Fast Access*, 532 F. Supp. 3d at 974; *see also* *Wise*, 600 F.3d at 1191 (holding that "state law theories of fraud, misrepresentation, and negligence all depend on the existence of an ERISA-covered plan to demonstrate that [the plaintiff] suffered damages" were really just lost plan benefits). Thus, Bristol's claims are clearly preempted under the "reference to" prong.

---

[8] Bristol also argues that the district court was wrong to rely on *California Spine* and *Pacific Recovery* because the plaintiffs in both cases were seeking payments connected to the respective plans' obligation to pay services at a certain percentage. Br. at 29–30. Yet this is precisely what Bristol admits to in this case.

2. The District Court Correctly Held That Bristol's State Law Claims Bear Directly on an ERISA-Regulated Relationship.

As a second basis to support ERISA preemption, the district court held that the "connection with" prong was satisfied because Bristol's claims bear on the "ERISA-regulated relationship" between the plan and plan member. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009) ("[A] state law claim is preempted when the claim bears on an ERISA-regulated relationship, *e.g.*, the relationship between plan and plan member, between plan and employer, between employer and employee."). Indeed, Bristol has brought the State Law Claims as the successor-in-interest of Sure Haven, "who itself had derivative standing to bring claims on behalf of plan members." 1-ER-13.

It is basic law in this Circuit that "ERISA preempts the state[-law] claims of a provider suing as an assignee of a beneficiary's rights to benefits under an ERISA plan." *The Meadows v. Emps. Health Ins.*, 47 F.3d 1006, 1008 (9th Cir. 1995) (citing *Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1378 (9th Cir. 1986)). Recognizing as much, Bristol's attempts to argue it has not brought its State Law Claims derivatively of the plan member's claim for benefits. This is baseless. As described *supra*, Bristol admits it was assigned the benefit claims at issue and any payment Sure Haven would receive following the VOBs would come from and be determined by the applicable plan. This is a quintessential ERISA-regulated relationship.

In addition, while the district court did not reach the issue, the "connection with" prong is also satisfied here because Bristol's State Law Claims also "interfere with nationally uniform plan administration." *Depot*, 915 F.3d at 666 (quoting *Gobeille*, 577 U.S. at 320). ERISA must assure "a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Conkright*, 559 U.S. at 517 (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002)).

As described above, Cigna has interpreted the fee-forgiving language in its plans the same way for decades across multiple jurisdictions. Allowing "a patchwork of different interpretations of a plan" is "a result that 'would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them.'" *Humble*, 878 F.3d at 484 (quoting *Conkright*, 558 U.S. at 517).

In contrast, Bristol's theory is essentially that any third-party provider that sought benefits from a plan through its assignment of benefits can avoid a denial based on plan terms by bringing state law claims based on routine VOB and authorization calls. This is precisely the result Congress sought to avoid by enacting Section 514(a)'s broad preemptive reach. *Davila*, 542 U.S. at 209 ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil

enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.").

Thus, preemption under the "connection with" prong is also clearly met and Bristol's claims are preempted for this reason as well.

> ### 3. The District Court's Summary Judgment Decision Is Consistent with Ninth Circuit Precedent.

Unable to find a flaw in district court's reasoning, Bristol spends pages of its Brief arguing that the district court's preemption decision somehow overlooked "controlling" Ninth Circuit precedent. Br. at 29. But no such "controlling" precedent exists.

To start, Bristol spends a great deal of time arguing that *The Meadows* is factually on point and should control. However, in cases like *Fast Access*, courts have looked at the same exact argument Bristol makes, and found it off the mark. For example, in *The Meadows* the provider was told, prior to treatment, that the husband and wife were covered when in fact they were not. *Fast Access*, 532 F.Supp.3d at 972; *The Meadows*, 47 F.3d at 1009. Thus, the state law claims in *The Meadows* "arose because there was no plan coverage for the [husband and wife] which was the very fact misrepresented by [the plan], to the detriment of [the provider]." *Fast Access*, 532 F.Supp.3d at 973 (alternations in original); *The Meadows*, 47 F.3d at 1010. As a result, the Ninth Circuit's decision in *The Meadows* relied in part "on the ***absence*** of an ERISA plan in place at the time the provider

sought to verify coverage." *Fast Access*, 532 F. Supp. 3d at 973 (emphasis in original).

Bristol also cites *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972 (9th Cir. 2007), but as the *Fast Access* court explained, "the plan in *Cedars-Sinai* essentially argued the same thing as the plan in *The Meadows* did, *i.e.* that it was not required to pay because the beneficiary was no longer an employee and was not covered by the employer-based health plan." *Fast Access*, 532 F.Supp.3d at 973. Therefore, both *Cedars Sinai* and *The Meadows* turned on an absence of coverage, which is not at issue here, and do not conflict with the District Court's summary judgment decision.

Bristol next points to *Catholic Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563 (9th Cir. 2008), which Bristol claims reaffirmed the holding in *The Meadows*. Br. at 24-25. But the limited discussion of the facts in *Catholic Healthcare* make clear that, at the pleading stage, the court found the provider's state law misrepresentation-based claims were "completely independent of the terms and meaning of an ERISA plan." *Cath. Healthcare*, 321 F. App'x at 565. That's not true in this case where there is unrebutted evidence that ERISA plans covered the transaction at issue and Bristol is seeking payments as the successor-in-interest of Sure Haven, who itself was an assignee of ERISA benefits. Moreover, as opposed to the pleadings in *Catholic Healthcare*, the undisputed

evidence at summary judgment shows that Bristol's contract theory is not independent from the applicable ERISA plans, because they were denied for fee-forgiving pursuant to plan terms.

Bristol also argues that *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct. 474 (2020) calls into question this Circuit's decision in *Wise*, 600 F.3d 1180, which as a result means the district court was wrong to rely on the holding in *Wise*.  But, the key principal from *Wise* is merely that state law theories that depend on the existence of an ERISA-covered plan to demonstrate damages are preempted by ERISA.  *Wise*, 600 F.3d at 1191.  As the district court recognized, this is both uncontroversial and exactly the case here.

In any event, Bristol does not explain how *Rutledge* overrules *Wise*, and the decision that Bristol cites to support this position, *Mabry v. ConocoPhillips Co.*, 2021 WL 189144, at *11 (D. Alaska Jan. 19, 2021), had its preemption analysis vacated on reconsideration.  2021 WL 2805358 (D. Alaska July 6, 2021).  More important, however, is that *Rutledge* cited the Supreme Court's prior decision in *Ingersoll-Rand* (*Rutledge*, 141 S.Ct. at 480), which *Wise* relies upon, so it does not follow that *Rutledge* altered the holding of *Wise* in any meaningful way.

Bristol also argues that the district court ignored lower court decisions in the Ninth Circuit at the pleading stage allowing a third-party provider's state law claims based on alleged representations that claims would be paid at UCR to go to

48

discovery. Br. at 31. But cases like *Summit Estate, Inc. v. Cigna Healthcare of California, Inc.*, 2017 WL 4517111 (N.D. Cal. Oct. 10, 2017) and *Morris B. Silver M.D., Inc. v. Int'l Longshore & Warehouse etc.*, 2 Cal. App. 5th 793 (2016) merely hold a plaintiff could *plead* state-law claims that were not preempted at the motion to dismiss stage, not that those claims were preempted at the summary judgment stage. *See also O.C. Multispecialty Surgery Ctr. v. Blue Cross & Blue Shield of Kan. City*, 2022 WL 3013137, at *2 (C.D. Cal. Feb. 8, 2022) (on a motion to dismiss). Moreover, in *Summit* and *Morris B. Silver* the providers did not bring an ERISA claim based on the same exact facts, nor did they plead they had received assignment of benefits from ERISA plan members or that the claims would be denied for fee-forgiving, which are key facts here. *Summit Estate*, 2017 WL 4517111, at *2, *15 n.5; *Morris Silver*, 2 Cal. App. 5th at 802-03.

Ultimately, Bristol has not cited a single decision from this Court or any court in this Circuit that is factually on point or where the court rejected an argument that state law claims were preempted by ERISA at the summary judgment stage. Thus nothing in Bristol's Brief merits reversal of the district court's ruling and it should be affirmed.

4.     The District Court's Summary Judgment Is Not In Conflict With
Precedent From Other Circuits.

Looking for help outside of this Circuit, Bristol's argues that the district
court's summary judgment decision conflicts with the majority law in other circuits.
But this is also wrong.

To begin with, Bristol ignores the most factually analogous Circuit-level case,
which is the Sixth Circuit's decision in *Cromwell v. Equicor-Equitable HCA Corp.*,
944 F.2d 1272 (6th Cir. 1991).  Like this one, that case involved a provider that
called the plan to verify coverage for the patient, and the plan provided the
verification.   944 F.2d at 1274-75.   The provider alleged breach of contract,
promissory estoppel, negligence and breach of good faith based on their purported
reasonable reliance on the defendant administrator's assurances of coverage for their
patient.  *Id.* at 1275.  The Sixth Circuit declared that "it is not the label placed on a
state law claim that determines whether it is preempted, but whether in essence such
a claim is for the recovery of an ERISA plan benefit."   *Id.* at 1276.  Thus, as is the
case here, the state law claims were alleged "as grounds for the recovery of benefits
from [the plan] for health care services rendered to the [patients]" and thus, the
provider's "state law claim [were] at the very heart of issues within the scope of
ERISA's exclusive regulation . . ." *Id.*

In contrast, all of the preemption decisions from other Circuits that Bristol
cites are easily distinguishable because, like *The Meadows*, they involve fact

50

patterns where there was no coverage under the plan, or misrepresentations about coverage, which are not at issue here, or do not involve healthcare providers at all. *See Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 224 (3d Cir. 2020) (the plans at issue did not provide out-of-network benefits so there was no coverage at all); *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008) (involving COBRA coverage that could be retroactively cancelled); *Gerosa v. Savasta & Co.*, 329 F.3d 317, 320 (2d Cir. 2003) (involving a negligence claim and not health care providers); *In Home Health, Inc. v. Prudential Ins. Co. of Am.*, 101 F.3d 600, 602 (8th Cir. 1996) (misrepresentation about whether plan maximum had been reached so there was no coverage); *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1530-31 (11th Cir. 1994) (involved alleged misrepresentations over number of days of home nursing care covered by the plan); *Hospice of Metro Denver, Inc. v. Grp. Health Ins. of Okla., Inc.*, 944 F.2d 752, 753 (10th Cir. 1991) (involved allegations that Blue Cross assured but later denied coverage to provider without assignment of benefits).

The same goes for Bristol's reliance on *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990), which is another case—like *The Meadows*— in which there was an absence of coverage when the services were rendered and the

provider neither sought benefits from the plan nor claimed that the plan acted improperly in denying the provider's claim. *Id.* at 250.[9]

For all of Bristol's reliance on *Memorial Hospital*, it ignores the more recent decision in *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 386 (5th Cir. 2011), *adhered to on reh'g en banc*, 698 F.3d 229 (5th Cir. 2012), which held that state law claims for unjust enrichment and quantum meruit—as opposed to misrepresentation claims, which were already dismissed here—were preempted by ERISA, because otherwise it would "allow any provider who has provided care for which the ERISA plan denied coverage to challenge the ERISA plan's interpretation . . ." *Id.* at 386-87. The Fifth Circuit further explained "[t]hat outcome would run afoul of Congress's intent that the causes of action created by ERISA be the exclusive means of enforcing an ERISA plan's terms, and permit state law to interfere with the relations among ERISA entities." *Id.* at 387. Again, this is precisely what Bristol is asking this Court to do, and it should be rejected.

> 5. This Court's Prior Decision Explicitly Took No Position on Preemption.

Finally, Bristol suggests that this Court has previously decided the preemption issue, and res judicata applies. Br. at 26. But, this Court's prior decision in this case

---

[9] Bristol ignores, however, that *Memorial Hospital* held that the district court correctly dismissed the provider's breach of contract claim because it was preempted. *See Mem'l Hosp.*, 904 F.2d at 250.

made clear that it took "no position on whether any or all of Bristol's state law claims are preempted by ERISA." *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 2022 WL 137547, at *1 n.3 (9th Cir. Jan. 14, 2022). Nor would res judicata apply because the denial of summary judgment is not a ***final*** judgment sufficient to give rise to res judicata. *See, e.g., U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 2008 WL 5101540, at *8 (E.D. Cal. Dec. 2, 2008) ("[D]enial of a summary judgment motion, cannot be the basis for application of the claim preclusion doctrine.") (quoting Moore's Fed. Prac. 3rd § 131.30(2)(c)(i))). Thus, this argument fails.

### B. Bristol's State Law Claims Fail as a Matter of Law.

This Court has recognized that the law of the case doctrine does not apply where "substantially different evidence" was adduced after an initial decision on summary judgment. *Mortimer v. Baca,* 594 F.3d 714, 721 (9th Cir. 2010). Here, Bristol cannot dispute that Cigna has identified critical pieces of evidence that were not in the record for the prior appeal when the Court reversed the district court's granting of Cigna's prior motion for summary judgment on the State Law Claims, including the ERISA administrative record and deposition testimony. Thus, while the district court did not reach the issue and the Court should not either, the new evidence clearly shows that Bristol's State Law Claims fail on the merits.

For example, it is axiomatic that there can be no contract unless the parties consent thereto, *i.e.*, have a meeting of the minds on all material points. *Am. Emps.*

*Grp., Inc. v. Emp. Dev. Dep't*, 154 Cal. App. 4th 836, 846 (Cal. Ct. App. 2007). On that score, Cigna's February 26, 2015 letter to Sure Haven is a critical piece of evidence that was not in the record when this Court reversed the District Court's prior decision.

The letter shows that ***before*** any of the services at issue and even before any of the VOB and authorization calls, Cigna told Sure Haven that Cigna would be denying claims for fee-forgiving absent proof of payment. 3-ER-336–38. There is no way that Cigna assented to a contract to pay claims when Cigna explicitly told Sure Haven it would be denying claims due to the fee-forgiving exclusion in the plans. *See, e.g.,* *Conn. Gen. Life Ins. Co. v. Grand Ave. Surgical Ctr., Ltd.*, 181 F. Supp. 3d 538, 546–47 (N.D. Ill. 2015) (granting summary judgment where Cigna told provider in letter that claims would be denied for fee-forgiving, because "[n]o judge or jury could find that [plaintiff] acted reasonably in relying on promises of coverage that were directly contradicted by [the letter] . . . .").

This Court also held that Cigna's disclaimers played before VOB calls "could be reasonably interpreted as informing providers like Sure Haven that it must fulfill the required terms of the deal . . . before it could be guaranteed payment. 1-SER-124. But the supplemented record now shows that not even Sure Haven itself believed that. ███████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████ 4-SER-834; 4-SER-845 (emphasis added).

Next, the new evidence shows that Bristol did not "introduce evidence of discussions over UCR" with Cigna call representatives. ████████████

████████████████████████████████████████████████████

████████████████ 4-ER-494–95; 4-SER-755; 4-SER-812, 814. ████████

████████████████████████████████████████████████████

██████████████████████ 4-ER-485, 88. ████████████████

████████████████████████████████████████████████████

████████████████████ 4-SER-718–19; 4-ER-490–91.  While this was not a reasonable belief, it does not matter, because it says nothing about **Cigna's understanding** of the calls, which was that the claims would be denied for fee-forgiving absent proof of payment.

Therefore, while the district court did not reach the merits of Bristol's State Law Claims beyond preemption, summary judgment is appropriate on the independent ground that these claims fail on the merits as well.  *See, e.g.*, *Stanford Hosp. & Clinics v. Multinat'l Underwriters, Inc.*, 2008 WL 5221071, at *7 (N.D. Cal. Dec. 12, 2008)* (holding that "there was no meeting of the minds regarding the payment of the claim" when the plaintiff only provided evidence of its own belief that a contract had been made.); *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co.*,

520 F. Supp. 2d 1184, 1193 (C.D. Cal. 2007).

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING BRISTOL'S PROCEDURALLY AND SUBSTANTIVELY DEFECTIVE MOTION FOR RECONSIDERATION.

The Ninth Circuit reviews a district court's denial of a post-judgment amendment (a motion for reconsideration) for an abuse of discretion. *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (establishing the standard of review and grounds upon which a motion to alter or amend a judgment may be granted). The discretion afforded to a district court considering a post-judgment amendment is "considerable." *Id.* Denying a motion for "a failure to comply with local rules is well within a district court's discretion." *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012).

Here, the district court correctly found that Bristol violated the Local Rules in two ways. ***First***, Bristol does not dispute that it failed to comply with Local Rule 7-18, which requires that, absent a good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the subject order. C.D. Cal. L.R. 7-18. Instead, Bristol argues that Federal Rule 59(e) has a longer timing deadline than the 14-day deadline mandated by Local Rule 7-18. But Bristol does not address any of the cases in the Central District of California which "have interpreted Local Rule 7-18 to be coextensive with Rules 59(e) and 60(b)" of the Federal Rules of Civil Procedure, *Dragan v. Valladolid*, 2021 WL 3260605, at *1-2 (C.D. Cal. Apr.

5, 2021), *aff'd*, 2022 WL 779911 (9th Cir. Mar. 14, 2022), or the good cause requirement of the Rule, *see Holmes v. Harris*, 2021 WL 2272395, at *3 (C.D. Cal. May 19, 2021), *aff'd*, 2022 WL 1198204 (9th Cir. Apr. 22, 2022). The District Court specifically found Bristol failed on both grounds, 1-ER-14, and did not abuse its discretion in denying the motion.

**Second**, Bristol ignores that the district court also found that Bristol did not satisfy the timing requirements of Local Rule 7-3, which was a separate basis to deny the Motion. At most, Bristol argues that a failure to comply with local rules does not automatically require denial of a party's motion and Cigna was not prejudiced, but the very decision that Bristol relies on to make the argument, *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015), held neither of these points amount to an abuse of discretion. *Id.* Thus, the district court ruling should be affirmed. *Stern v. Zielke*, 2018 WL 6131587, at *3 (C.D. Cal. Oct. 23, 2018) (citing *Tri-Valley CAREs*, 671 F.3d at 1131).

Finally, while Bristol's motion for reconsideration was clearly untimely and procedurally improper under the Local Rules, it also failed on the merits. Bristol did not even attempt to make a credible argument that its Motion met any of the four factors laid out by the Ninth Circuit in *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) as a proper basis to support a Rule 59(e) motion or under Rule 60(b). Thus, Bristol completely failed to provide a substantive basis for the Court

to reconsider its order granting Cigna's motion for summary judgment, and that is an alternative basis to affirm the District Court.

## CONCLUSION

For all of the foregoing reasons, this Court should affirm the subject orders of the district court in full.

Dated: June 20, 2023          Respectfully submitted,

                               **McDERMOTT WILL & EMERY LLP**

By:      */s/ William P. Donovan Jr.*

            William P. Donovan, Jr.
            2049 Century Park East, Suite 3200
            Los Angeles, CA 90067-3206
            Telephone: +1 310 277 4110
            Facsimile: +1 310 277 4730

            Richard W. Nicholson, Jr.
            One Vanderbilt Avenue
            New York, NY 10017-3852
            Telephone: +1 212-547-5337
            Facsimile: +1 212-547-5400

            *Counsel for Defendants-Appellees*
            *Cigna Health and Life Insurance*
            *Company and Cigna Behavioral Health,*
            *Inc.*

## <u>STATEMENT OF RELATED CASES</u>

I, the undersigned, hereby certify that I am aware of no related cases.

Dated: June 20, 2023

Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

By: _/s/ William P. Donovan, Jr._

William P. Donovan, Jr.
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310-277-4110
Facsimile: +1 310-277-4730

Richard W. Nicholson, Jr.
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: +1 212-547-5337
Facsimile: +1 212-547-5400

_Counsel for Defendants-Appellees_
_Cigna Health and Life Insurance_
_Company and Cigna Behavioral Health,_
_Inc._

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and Ninth Circuit Local Rule 32-1(a) because this brief contains 13,914 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief also complies with the typeface requirements Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6). It has been prepared in Word using a proportionally spaced Times Roman 14-point font.

Dated: June 20, 2023          Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

By:     */s/ William P. Donovan, Jr.*
William P. Donovan, Jr.
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310-277-4110
Facsimile:  +1 310-277-4730

Richard W. Nicholson, Jr.
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: +1 212-547-5337
Facsimile:  +1 212-547-5400

*Counsel for Defendants-Appellees*
*Cigna Health and Life Insurance*
*Company and Cigna Behavioral Health,*
*Inc.*

60

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2023, I caused the foregoing to be filed electronically through the Appellate CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Dorothy F. Easley, MS, JD, BCS Appeals
EASLEY APPELLATE PRACTICE PLLC
*Lead Appellate Attorneys for Appellant Bristol SL Holdings*
Florida Bar No.: 0015891
1200 Brickell Avenue, Suite 1950
Miami, Florida 33131
T: (305) 444-1599; (800) 216-6185
Fla. Bar Designated eMails:
administration@easleyappellate.com
admin2@easleyappellate.com

Matthew M. Lavin, Esq.
Aaron Modiano, Esq.
ARNALL GOLDEN GREGORY, LLP
*Appellant/Plaintiff Counsel for Bristol SL Holdings*
2100 Pennsylvania Ave., N.W.
Suite 350S
Washington DC 20037
T: (202) 677-4048
matt.lavin@agg.com
aaron.modiano@agg.com

John W. Tower, Esq.
LAW OFFICE OF JOHN W. TOWER
*Appellant/Plaintiff Counsel for Bristol SL Holdings*
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA 92024
T: (760) 436-5589
F: (760) 479-0570
towerlawsd@gmail.com

*/s/ William P. Donovan, Jr.*
William P. Donovan, Jr.

61

# **ADDENDUM**

### **29 U.S.C. § 1132(a)(1)(B). Civil enforcement**:

PERSONS EMPOWERED TO BRING A CIVIL ACTION.

A civil action may be brought –

**(1)** by a participant or beneficiary–

**(A)** for the relief provided for in subsection (c) of this section, or

**(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

**(2)** by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

**(3)** by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

* * *

### **29 U.S.C. § 1144(a). Preemption:**

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

* * *

### **29 C.F.R. § 2560.503-1(g). Manner and Content of Notice of Benefit Determination:**

MANNER AND CONTENT OF NOTIFICATION OF BENEFIT DETERMINATION.

**(1)** Except as provided in paragraph (g)(2) of this section, the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR

62

2520.104b–1(c)(1)(i), (iii), and (iv), or with the standards imposed by 29 CFR 2520.104b–31 (for pension benefit plans). The notification shall set forth, in a manner calculated to be understood by the claimant–

**(i)** The specific reason or reasons for the adverse determination;

**(ii)** Reference to the specific plan provisions on which the determination is based;

**(iii)** A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

**(iv)** A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

**(v)** In the case of an adverse benefit determination by a group health plan–

**(A)** If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; or

**(B)** If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

\* \* \*

**Fed. R. Civ. P. 56. Summary Judgment**:

(a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.

63

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

…

(c) PROCEDURES.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

(e) FAILING TO PROPERLY SUPPORT OR ADDRESS A FACT. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

> (1) give an opportunity to properly support or address the fact;

> (2) consider the fact undisputed for purposes of the motion;

> (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

> (4) issue any other appropriate order.

* * *

**Fed. R. Civ. P. 59(e).  Time to Move:**

MOTION TO ALTER OR AMEND JUDGMENT.

A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

* * *

**Fed. R. Civ. P. 60(c).  Time to Move:**

TIMING.

A motion under Rule 60(b) must be made within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding.

* * *

**C.D. Cal. L.R. 7-3.  Conference of Counsel Prior to Filing of Motions:**

In all cases not listed as exempt in L.R. 16-12, and except in connection with discovery motions (which are governed by L.R. 37-1 through 37-4) and applications under F. R. Civ. P. 65 for temporary restraining orders or preliminary injunctions, counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. The conference must take place at least 7 days prior to the filing of the motion.

If the parties are unable to reach a resolution that eliminates the necessity for a hearing, counsel for the moving party must include in the notice of motion a statement to the following effect:

"This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)."

**\* \* \***

### C.D. Cal. L. R. 7-18.  Motion for Reconsideration:

A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered. No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion. Absent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application.

**\* \* \***