**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., a California corporation, in its capacity as the owner of the claims for Sure Haven, Inc., a California corporation, *Plaintiff-Appellant*, v. CIGNA HEALTH AND LIFE INSURANCE COMPANY, a Connecticut corporation; CIGNA BEHAVIORAL HEALTH, INC., a Connecticut corporation, *Defendants-Appellees*. | No. 23-55019 D.C. No. 8:19-cv-00709-PSG-ADS OPINION |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

Argued and Submitted December 7, 2023
San Francisco, California

Filed May 31, 2024

Before: Sidney R. Thomas, Daniel A. Bress, and Anthony D. Johnstone, Circuit Judges.

Opinion by Judge Bress

# SUMMARY[*]

## Employee Retirement Income Security Act / Preemption

Affirming the district court's summary judgment in favor of the defendants in an action brought by a drug treatment center's successor-in-interest, the panel held that the Employee Retirement Income Security Act of 1974 preempted claims that a health plan administrator's denial of reimbursements violated state law.

The plaintiff alleged that the treatment center's calls to the plan administrator verifying out-of-network coverage and seeking authorization to provide health services created independent contractual obligations. There was no dispute that the patients and their treatment were covered under the health plans, but payment was later rejected based on fee-forgiving, which the plans prohibited. (Fee-forgiving is a healthcare provider's practice of failing to collect the financial contributions, such as co-pays and deductibles, that participants are required to pay under an ERISA plan.)

The panel held that the plaintiff's state law claims for breach of contract and promissory estoppel were preempted by ERISA because they had both a "reference to" and an "impermissible connection with" the ERISA plans that the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

defendants administered. The panel held that *The Meadows v. Employers Health Ins.*, 47 F.3d 1006 (9th Cir. 1995) (holding that ERISA does not preempt third-party claims for reimbursement triggered by the complete absence of ERISA plan coverage), did not apply because, although the plaintiff brought its state law claims as an independent entity, its claims were not independent of an ERISA plan because they concerned the denial of reimbursement to patients who were covered under such plans.

In a concurrently filed memorandum disposition, the panel affirmed the district court's grant of summary judgment to the plan administrator on the plaintiff's ERISA claim seeking recovery of plan benefits.

## COUNSEL

Dorothy F. Easley (argued), Easley Appellate Practice PLLC, Miami, Florida; Matthew M. Lavin and Aaron Modiano, Arnall Golden Gregory LLP, Washington, D.C.; John W. Tower, Law Office of John W. Tower, Encinitas, California; for Plaintiff-Appellant.

William P. Donovan, Jr. (argued), McDermott Will & Emery LLP, Los Angeles, California; Richard W. Nicholson, Jr., McDermott Will & Emery LLP, New York, New York; for Defendants-Appellees.

Matthew S. Rozen, Max E. Schulman, and Robert A. Batista, Gibson Dunn & Crutcher LLP, Washington, D.C.; Heather L. Richardson, Gibson Dunn & Crutcher LLP, Los Angeles, California; for Amici Curiae The ERISA Industry Committee, American Benefits Council, and California Association of Health Plans.

# OPINION

BRESS, Circuit Judge:

A drug treatment center's successor-in-interest claims that a health plan administrator's denial of reimbursements violated state law. The theory is that the treatment center's calls to the plan administrator verifying out-of-network coverage and seeking authorization to provide health services created independent contractual obligations. We hold that the Employee Retirement Income Security Act of 1974 (ERISA) preempts these state law claims. We affirm.[1]

## I

### A

Health care plans often designate providers as "in-network" or "out-of-network." In-network providers agree to render health care services to plan beneficiaries at a discounted rate, in exchange for greater access to the plan's subscribers. Out-of-network providers do not agree to provide services at any set rate, and so do not receive the same level of facilitated access to plan members. To confirm the cost and level of service provided by out-of-network providers, many health care plans require that out-of-network services be "preauthorized" as a condition for coverage. Preauthorization will entail some form of communication between the plan administrator and the

---

[1] In a separate memorandum disposition issued concurrently with this opinion, we affirm the district court's grant of summary judgment to the plan administrator on the plaintiff's ERISA claim seeking recovery of plan benefits. *See* 29 U.S.C. § 1132(a)(1)(B).

provider, through which the plan administrator relays the patient's eligibility for benefits.

Plaintiff Bristol SL Holdings, Inc. is the successor-in-interest to Sure Haven, Inc., a defunct for-profit drug rehabilitation and mental health treatment center. When Sure Haven was in operation, it received reimbursements from commercial insurance companies, including defendants Cigna Health and Life Insurance Company and Cigna Behavioral Health, Inc. (collectively, "Cigna"). Cigna provides plan administration services for employer-sponsored health insurance plans governed by ERISA. The plan documents set the terms and conditions of the available health coverage, but they delegate to Cigna the authority to administer the plans.

Sure Haven was an out-of-network provider for Cigna-administered health plans, which meant that Cigna never contractually agreed to reimburse Sure Haven's services at any set rate. Instead, before Sure Haven accepted a patient covered by a Cigna-administered plan, Sure Haven would place a "verification call" to Cigna to determine whether the patient qualified for out-of-network benefits and to find out the applicable reimbursement rate. If the patient was eligible for coverage, Cigna would quote Sure Haven a reimbursement rate in the form of a percentage of the "usual and customary rate" (UCR) charged for Sure Haven's services. The plans defined the maximum reimbursable charge for each service based on UCR. Once a patient's therapy was underway, Sure Haven would place additional "authorization calls" to Cigna to confirm that the patient's plan authorized the specific treatments that Sure Haven intended to provide.

For several years, Cigna reimbursed Sure Haven without incident.  In April 2014, however, Cigna became suspicious that Sure Haven was improperly failing to collect the financial contributions (co-pays, deductibles, etc.) that plan participants were required to pay under the plans.  This practice, known as "fee-forgiving," inflates insurance costs at an insurer's expense by eliminating the financial incentive for patients to seek cheaper in-network care.  The Cigna-administered health plans permit Cigna to deny reimbursement of "charges which [Cigna members] are not obligated to pay or for which [Cigna members] are not billed."  It is not disputed in this litigation that this contractual language permits Cigna to deny claims on account of fee-forgiving.  *See N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 952 F.3d 708, 711, 715 (5th Cir. 2020); *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 701–02 (7th Cir. 1991); *see also SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (noting that we previously "adopted the Seventh Circuit's reasoning in *Kennedy*" which "approv[ed] an insurer's prohibition on providers' waiver of patient co-payments").  Nor is there any suggestion that Sure Haven was unaware of the fee-forgiving prohibition (its defense on the merits is that it did not engage in fee-forgiving).

After gathering additional evidence that supported its suspicions, Cigna sent Sure Haven a letter in February 2015 detailing its concerns.  Quoting the above language from the plans, Cigna explained that it would deny claims submitted by Sure Haven unless they were accompanied by "a credit card receipt, a cancelled check, or some other form of documentation showing that the Cigna customer actually incurred and personally paid the expense."  Cigna then placed a "fee-forgiving flag" on Sure Haven's requests for

reimbursement, declining every subsequent claim for which Sure Haven failed to provide adequate proof of patient payment.

Based on Sure Haven's alleged fee-forgiving, Cigna refused to reimburse the treatment of 106 patients. According to Bristol, those unreimbursed claims total over $8.6 million. Sure Haven filed for bankruptcy in 2017. Bristol—a holding company owned by the three former shareholders of Sure Haven—purchased Sure Haven's insurance claims against Cigna from the bankruptcy estate. Bristol then began negotiating with Cigna over payment. When negotiations failed, Bristol sued Cigna in federal court.

B

Bristol's complaint asserted an ERISA claim for recovery of plan benefits under 29 U.S.C. § 1132(a)(1)(B) and various state law contract and fraud claims. With respect to ERISA, Bristol alleged that the plan participants and beneficiaries (the Sure Haven patients) had assigned payment of their insurance benefits to Sure Haven, for whom Bristol was now the successor-in-interest through its purchase of Sure Haven's claims in bankruptcy. *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289–91 (9th Cir. 2014) (discussing medical providers' ability to sue under ERISA as an assignee of patients' claims for payment of benefits). Bristol's overarching state law theory, meanwhile, was that Cigna's representations during the verification and authorization calls created enforceable agreements to reimburse Sure Haven at a certain percentage of UCR, which

Cigna breached when it later refused to make payments due to Sure Haven's alleged fee-forgiving.[2]

The district court initially dismissed Bristol's ERISA claim on the ground that Bristol lacked statutory standing as Sure Haven's assignee. It also dismissed most of Bristol's state law claims under Rule 12(b)(6), and then later granted summary judgment on the three remaining claims: breach of oral contract, breach of implied contract, and promissory estoppel. In the district court's view, Bristol had "failed to prove that a Cigna call representative's authorization [of treatment] meant a promise to pay a specific price."

Bristol appealed. In *Bristol SL Holdings, Inc. v. Cigna Health & Life Insurance Co.*, 22 F.4th 1086, 1092 (9th Cir. 2022) (*Bristol I*), we reversed the dismissal of Bristol's ERISA claim, holding that Bristol had derivative standing to sue for unpaid benefits as Sure Haven's successor-in-interest through bankruptcy proceedings. In an accompanying memorandum disposition, we also reversed the district court's grant of summary judgment on Bristol's breach of contract and promissory estoppel claims. *See Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 2022 WL 137547, at *1 (9th Cir. 2022) (*Bristol I* memorandum disposition). As to these claims, we observed that, "[i]n addition to the hundreds of verification and authorization calls, Bristol introduced evidence of a prior course of dealing with Cigna, specific and individualized treatment plans, as well as agreements over specific percentages of UCR rates for the services rendered." *Id.* This evidence, we held, was "sufficient for a reasonable factfinder to conclude that an

---

[2] In our accompanying memorandum disposition on Bristol's ERISA claim, we conclude that Cigna identified sufficient proof of Sure Haven's fee-forgiving.

enforceable contract had been formed under governing California law." *Id.* But we expressly reserved judgment "on whether any or all of Bristol's state law claims are preempted by ERISA." *Id.* at n.3 (citing 29 U.S.C. § 1144(a)).

On remand, the district court allowed the parties to conduct additional discovery and granted Cigna leave to amend its answer to add an ERISA preemption defense. Cigna moved for summary judgment a second time. The district court granted Cigna's motion, ruling (as relevant here) that ERISA preempts Bristol's state law claims for breach of contract and promissory estoppel based on the verification and authorization calls.

Bristol now appeals again. The *Bristol I* memorandum disposition contemplated that preemption may be a valid defense to Bristol's state law claims. *See* 2022 WL 137547, at *1 n.3. Because we previously left open the possibility that ERISA could preempt Bristol's state law claims, we reject Bristol's contention that Cigna was prevented from raising the preemption issue and that the district court was precluded from addressing it. We review the district court's preemption determination de novo. *Johnson v. Couturier*, 572 F.3d 1067, 1078 (9th Cir. 2009).

II

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" that ERISA covers. 29 U.S.C. § 1144(a). This "clearly expansive" preemption provision, *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995), extends to state common law causes of action, *see, e.g.*, *Or. Teamster Emps. Tr. v. Hillsboro Garbage Disposal, Inc.*, 800 F.3d 1151, 1155 (9th Cir.

2015). The Supreme Court has identified "'two categories' of state law claims that 'relate to' an ERISA plan—claims that have a 'reference to' an ERISA plan, and claims that have 'an impermissible "connection with"' an ERISA plan." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019) (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016)); *see also Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 997 F.3d 848, 858 (9th Cir. 2021).

The question in this case is whether ERISA preempts state law contract claims based on an out-of-network provider's calls to a plan administrator seeking to verify plan coverage and obtain preauthorization for medical services, where there is no dispute that the patients and their treatment were covered under the plans but where payment was later rejected based on fee-forgiving, which the plans prohibited. We hold that Bristol's state law claims are preempted because they have both a "reference to" and an "impermissible connection with" the ERISA plans that Cigna administers. Although ERISA's preemption provision is not boundless, *see Gobeille*, 577 U.S. at 319, the state law claims at issue here fall within its ambit.

A

We begin by analyzing Bristol's claims under the "reference to" aspect of ERISA express preemption. "A state-law claim has a '"reference to" an ERISA plan' if it 'is premised on the existence of an ERISA plan' or if 'the existence of the plan is essential to the claim's survival.'" *Depot*, 915 F.3d at 665 (quoting *Hillsboro Garbage*, 800 F.3d at 1155–56). The Supreme Court thus "has had no trouble holding that ERISA preempts" state law claims "that 'provid[e] alternative enforcement mechanisms'" for ERISA

plan obligations. *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 981 (9th Cir. 2001) (quoting *Travelers*, 514 U.S. at 658) (alteration in original). We have similarly explained that, when a plaintiff's state law claim is "[i]n reality" a "challenge [to] the administration of ERISA plan benefits," it is preempted and may not proceed. *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 818 (9th Cir. 1992).

In *Greany*, for example, the plaintiffs, husband and wife, sued the husband's employer and plan administrator for negligence after the defendants' clerical error prevented the plaintiffs from converting their ERISA plan to an individual policy, which led to a loss of coverage. *Id.* at 815–16, 818. We explained that, because conversion was a "benefit provided pursuant to the ERISA group plan," the plaintiffs' "negligence claim was not based on breach of a duty owed to [plaintiffs] by [his employer] that was independent from . . . the group plan." *Id.* at 818. Instead, the plaintiffs were simply challenging "the administration of ERISA plan benefits, specifically the conversion rights." *Id.* That meant the claim was preempted. *Id.*

We reached a similar conclusion in *Bast v. Prudential Insurance Company of America*, 150 F.3d 1003 (9th Cir. 1998), *as amended*. There, a plaintiff plan member sued the plan administrator for breach of contract and loss of consortium after the administrator delayed authorizing lifesaving treatment for the plaintiff's wife. *Id.* at 1005–06. We held that these state law causes of action alleged the "improper processing of a claim for benefits under an insured employee benefit plan." *Id.* at 1007. ERISA therefore preempted them. *Id.* at 1008.

Like the claims at issue in *Greany* and *Bast*, Bristol's breach of contract and promissory estoppel claims are "ERISA benefits claim[s] in the garb of [] state law." *Dishman*, 269 F.3d at 983. When Sure Haven called Cigna to verify out-of-network coverage, the context for this communication concerned whether reimbursement was available under the ERISA plans that Cigna administers. There is no dispute that the patients were indeed covered by the plans, and when Sure Haven sought preauthorization to perform certain treatments, it was seeking clearance to provide what all agree were plan-covered services. Later, when Cigna refused to reimburse Sure Haven, it did so because Sure Haven's fee-forgiving meant that the terms of the ERISA plans no longer permitted payment.

By attempting to secure plan-covered payments discussed via phone through the alternative means of state contract law, Bristol is "seeking to obtain through a [state contract] remedy that which [it] could not obtain through ERISA." *Id.* This effort triggers preemption. That Bristol's claims have a "reference to" the Cigna-administered ERISA plans is only further confirmed by the fact that Bristol has brought a parallel claim for the denial of ERISA benefits as the plan participants' assignee.

Bristol's state law claims also rely on the substance of the ERISA plans to calculate damages. As discussed, Bristol's theory of state law liability is that Cigna's representations during the verification and authorization calls created enforceable contracts to pay Sure Haven certain percentages of UCR. But the plans set different reimbursement rates based on specified formulae. And Bristol specifically invokes Cigna's plan terms to supersede any representations that Cigna made on the calls, arguing in its opening brief that, "[t]o the extent any stated percentages

Case: 23-55019, 05/31/2024, ID: 12888401, DktEntry: 62-1, Page 13 of 20

Bristol SL Holdings v. Cigna Health & Life 13


Cigna set forth on the verification calls are inconsistent with the plans' documents, the plan payment rate may potentially apply . . . ." Bristol's reliance on the plans for its state law theories supports preemption under the "reference to" test.

Bristol strives to characterize its claims as "independently based on Cigna's failure to make proper payment to Sure Haven pursuant to Cigna's actions and representations on its verification calls," rather than on "any legal duty imposed by ERISA." But the record reveals that the terms of Cigna's plans are central to the state law claims. We thus hold that Bristol's state law contract claims are preempted because they have an impermissible "reference to" ERISA plans.

B

We reach the same result when analyzing Bristol's claims under the "connection with" test for ERISA preemption. "A claim has an impermissible connection with an ERISA plan if it governs a central matter of plan administration or interferes with nationally uniform plan administration, or if it bears on an ERISA-regulated relationship." *Depot*, 915 F.3d at 666 (internal citations and quotation marks omitted). If allowed to proceed, Bristol's state law claims would do at least two of the three.

First, permitting state law liability on Bristol's claims would unduly intrude on a "central matter of plan administration," namely, Cigna's overarching system of verifying out-of-network coverage and authorizing treatment by phone, while later conditioning reimbursement on whether a medical provider has secured the proper financial contributions from plan participants. Pre-treatment verification of out-of-network plan coverage and authorization of medical services are standard features of

modern managed care. *See* Ani Turner et al., *Impacts of Prior Authorization on Health Care Costs and Quality: A Review of the Evidence*, Center for Value in Health Care, at 4 (Nov. 2019); J. Scott Andresen, *Is Utilization Review the Practice of Medicine? Implications for Managed Care Administrators*, 19 J. Legal Med. 431, 432 (1998). Indeed, Bristol represents that Sure Haven had more than 1,000 calls with Cigna concerning the 106 patients at issue. Preauthorization communications between out-of-network providers and plan administrators focus care on medically appropriate treatments while ensuring that the typically more expensive out-of-network care is cost-justified. *See* Gov't Accountability Off., *Medicare: CMS Should Take Actions to Continue Prior Authorization Efforts to Reduce Spending*, at 6 (Apr. 2018); Wendy Warring & Lauren E. M. Bedel, *Streamlining Prior Authorization: Final Report & Recommendations*, Network for Excellence in Health Innovation, at 12–13 (Sept. 30, 2021); Andresen, 19 J. Legal Med. at 432, 434. The enforcement of plan prohibitions on fee-forgiving is also a regular feature of health plan management. *See, e.g.*, *N. Cypress*, 898 F.3d at 470; *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1479 (9th Cir. 1991); *Kennedy*, 924 F.2d at 699; John L. Utz, *Network Viability and the Emboldened Out-of-Network Provider*, 23 No. 2 ERISA Litig. Rep. 11 (2015).

By Bristol's theory of state contract law liability, however, every time a plan administrator verifies plan coverage in standard pre-treatment calls, but then later denies reimbursement for prohibited fee-forgiving, the insurer would be legally bound to make payment based on the earlier call. That obligation would be at odds with the way ERISA plans operate, because reimbursement under a plan is ultimately contingent on information and events

beyond the initial verification and preauthorization communications.

The facts of this case demonstrate the problem with the state law regime that Bristol desires.  The Cigna-administered plans, as interpreted, prohibit reimbursement of out-of-network treatment rendered without the required financial contributions from plan participants.  But plan administrators typically cannot determine whether participants will make those contributions until after services have been preauthorized, rendered, and submitted for reimbursement.  Subjecting plan administrators to the prospect of binding contracts through pre-treatment calls would thus risk stripping them of their ability to enforce plan terms that cannot be applied prior to treatment, whether related to fee-forgiving or otherwise.  The resulting Catch-22—that administrators must abandon either their plan terms or their preauthorization programs—is the kind of intrusion on plan administration that ERISA's preemption provision seeks to prevent.  *See Gobeille*, 577 U.S. at 320 (explaining that state law can have an impermissible "connection with" ERISA plans if it "force[s] an ERISA plan to adopt a certain scheme" of coverage) (quoting *Travelers*, 514 U.S. at 668); *Ky. Ass'n of Health Plans, Inc. v. Nichols*, 227 F.3d 352, 362–63 (6th Cir. 2000) (holding that ERISA preempted state statute requiring plans to reimburse out-of-network providers under "connection with" standard because the state law "directly affect[ed] the administration of the [insurer's] plans").

Second, and for similar reasons, allowing liability on Bristol's state law claims would impermissibly "interfere[] with nationally uniform plan administration." *Depot*, 915 F.3d at 666 (quoting *Gobeille*, 577 U.S. at 320).  One goal of ERISA is to "induc[e] employers to offer benefits by

assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 379 (2002). But if providers could use state contract law to bind insurers to their representations on verification and authorization calls regardless of plan rules on billing practices, benefits would be governed not by ERISA and the plan terms, but by innumerable phone calls and their variable treatment under state law. This is the type of discordant regime that "ERISA's comprehensive pre-emption of state law was meant to minimize." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 105 n.25 (1983).

For all these reasons, "connection with" preemption applies.

C

Notwithstanding the foregoing, Bristol relies on *The Meadows v. Employers Health Insurance*, 47 F.3d 1006 (9th Cir. 1995) to argue that there can be no preemption because Bristol is suing "not as an assignee of a purported ERISA beneficiary, but as an *independent* entity claiming damages." *Id.* at 1008. It is true that Bristol brings its state law claims as an independent entity. But Bristol misapprehends *The Meadows*. *The Meadows* does not govern a case such as this, in which the plaintiff's claims are not independent of an ERISA plan because they concern the denial of reimbursement as to patients who were covered under such plans.

In *The Meadows*, a substance abuse treatment facility contacted a plan administrator to verify health insurance coverage for Mr. and Mrs. Friedel. *Id.* at 1007–08. The plan administrator stated on telephone calls that the Friedels were

eligible for treatment, later confirming this to the treatment facility in writing. *Id.* The substance abuse center then provided treatment to both Mr. and Mrs. Friedel. *Id.* When the Friedels' treatment concluded, however, the plan administrator refused to pay, newly asserting that the plan did not cover the Friedels because before receiving treatment, Mr. Friedel had terminated his employment, "at which time his ERISA medical coverage ceased." *Id.* at 1007–08, 1010. Seeking reimbursement for the costs of care, the treatment facility sued the plan administrator for negligent misrepresentation, estoppel, and breach of contract based on its oral and written representations of coverage. *Id.* at 1008.

We held that ERISA did not preempt the treatment center's state law claims. *Id.* at 1009. We explained that the claims fell "outside the bounds of the ERISA 'relates to' standard because neither [the treatment facility] nor the Friedels had any existing ties to the ERISA plan" when the medical care was provided. *Id.* Because their ERISA coverage had lapsed before they ever contacted the facility, "the Friedels were not beneficiaries of any plan at the time [the plan administrator] misrepresented the existing coverage." *Id.* at 1010. When the state law claims at issue "arose because there was no plan coverage for the Friedels," those claims neither "implicated the administration of the ERISA plan" nor "expand[ed] the rights of the patient to receive benefits under the terms of the plan." *Id.* This made ERISA preemption inappropriate. *Id.*

*The Meadows* stands for the proposition that ERISA preemption does not apply when state law claims are triggered by the complete lack of any ERISA plan. *The Meadows* accordingly has no bearing on this case, in which Bristol is seeking reimbursement for services provided to

patients who were covered by ERISA plans at the time of Cigna's alleged oral representations.

In explaining its conclusion that ERISA preemption does not apply to claims premised on the absence of a governing plan, *The Meadows* also made the broader observation that "ERISA does not preempt a third-party provider's independent state law claims against a plan." *Id.* But *The Meadows* does not stand for the principle that all state law claims by a third-party provider fall outside the scope of ERISA preemption.

The reference in *The Meadows* to "independent state law claims" means claims "independent" of an ERISA plan, not claims arising from an "independent" source of law. The claims in *The Meadows* were independent because there was no operative ERISA plan. *Cf. Greany*, 973 F.2d at 818 (explaining that claims are not "independent" from an ERISA plan when they concern benefits provided by that plan). Here, the plan participants were covered by extant ERISA plans, so Bristol's state law claims are not "independent" within the meaning of *The Meadows*. *See Trustmark Life Ins. Co. v. Univ. of Chi. Hosps.*, 207 F.3d 876, 882 (7th Cir. 2000) (distinguishing *The Meadows* as being based on the insurer's "mistaken assurances" as to "whether patients were covered by the insurer's policy").

Reading *The Meadows* broadly to allow any state law claim by a medical provider, regardless of whether its claims were for benefits covered by an ERISA plan, would not be consistent with *The Meadows*' key facts and core analysis. As we have discussed, *The Meadows* repeatedly emphasized that the claims it addressed lay "outside the bounds of the ERISA 'relates to' standard because neither the [facility] nor the Friedels had any existing ties to the ERISA plan." 47

F.3d at 1009; *see also id.* at 1010 ("[T]he claims arose because there was no plan coverage for the Friedels . . . ."). Confirming this interpretation, the two authorities upon which *The Meadows* primarily relied, *Harris v. Provident Life and Accident Insurance Co.*, 26 F.3d 930, 933–34 (9th Cir. 1994), and *Memorial Hospital System v. Northbrook Life Insurance Co.*, 904 F.2d 236, 239 (5th Cir. 1990), likewise concerned claims regarding patients who were not ERISA plan beneficiaries.

*The Meadows* specifically relied upon *Harris*'s holding that ERISA preemption did not apply when "an employee decided not to purchase ERISA benefits" and thus "never became a plan beneficiary," allegedly because of the misrepresentations of an ERISA plan administrator. 47 F.3d at 1009 (citing *Harris*, 26 F.3d at 933). *The Meadows* similarly relied on the Fifth Circuit's decision in *Memorial Hospital* to reason that "if a patient was not covered under the ERISA plan . . . a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the plan." *Id.* at 1010 (citing *Memorial Hosp.*, 904 F.2d at 246). *The Meadows* is properly read as following the Fifth Circuit's lead in finding not preempted those state law claims that arise not "due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage." *Memorial Hosp.*, 904 F.2d at 246. That, however, is not the situation in this case.

The other out-of-circuit authorities that Bristol cites largely stand for the same proposition as *The Meadows*: ERISA does not preempt third-party claims for reimbursement triggered by the complete absence of ERISA plan coverage. *See, e.g.*, *Memorial Hospital*, 904 F.2d at 246; *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint*

*Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596–99 (7th Cir. 2008) (relying on *The Meadows*); *Hospice of Metro Denver, Inc. v. Grp. Health Ins. of Okla., Inc.*, 944 F.2d 752, 755 (10th Cir. 1991) (per curiam).

Some circuits have permitted providers' state law claims for misrepresentation of health coverage to proceed when the patients were covered by an ERISA plan, but—contrary to the insurer's representations—lacked coverage for the specific treatment rendered. *See, e.g.*, *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 224 (3d Cir. 2020); *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 383–84 (5th Cir. 2011); *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533–34 (11th Cir. 1994). This line of authority is likewise distinguishable from this case. Here, there is no evidence that the 106 patients in question were ineligible for coverage at the time of the verification and authorization calls, or that Cigna misrepresented patient coverage, or the extent of coverage, during the calls. By Bristol's own allegations, these patients were eligible for coverage at the time of the preliminary calls. Reimbursement was instead denied because Cigna later determined that Sure Haven had engaged in fee-forgiving, in violation of plan terms. Under these circumstances, Bristol's state law claims "relate to" the Cigna-administered plans that covered the patients and disallowed fee-forgiving.

\*     \*     \*

For the reasons set forth here and in our accompanying memorandum disposition, the judgment of the district court is

**AFFIRMED.**